FILED

2009 Jun-02  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRIAN A. MCVEIGH, an individual, and** | ) | |
| **LYNNE WHITTEN, an individual,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO. CV-09-0685-S** |
| **v.** | ) | |
| | ) | |
| **CALLAN ASSOCIATES, INCORPORATED,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT ASSET MANAGERS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants INTECH Investment Management LLC, Rhumbline Advisers, Earnest Partners, LLC, Turner Investment Partners, Inc., Acadian Asset Management LLC, Principal Global Investors, LLC, and Western Asset Management Company (collectively referred to herein as the "Asset Managers") have moved this Honorable Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and submit this memorandum in support of their Motion.

## INTRODUCTION

Plaintiffs have sued the PACT Trust Fund's investment advisor, Callan Associates, Inc., and the individual asset managers, including the seven Asset Managers identified above. The Complaint must be dismissed because Plaintiffs lack Article III standing and their claims are not ripe for adjudication. Additionally, the Complaint must be dismissed for failure to state a claim upon which relief can be granted.

Alabama's Pre-Paid Affordable College Tuition or PACT, Program, was formed by an Act of the Alabama Legislature and began operating in 1990.  The purpose of the Program is to allow families to pre-pay for the college education of their children, grandchildren and other relatives.  Essentially, the PACT contract obligates the PACT Program to make qualifying college tuition payments for identified college students.  The two named Plaintiffs in this action entered into the PACT Program in 2002 and 1999.  Plaintiffs allege that the beneficiaries of these specific PACT contracts are scheduled to enroll in college in 2015 and 2019.  As a result, the beneficiaries of the PACT contracts at issue will not begin receiving college tuition payment benefits for at least six years.  Therefore, neither of the Plaintiffs can claim they have not received something to which they believe that they were entitled; nor can they claim to know that they will sustain injury in the future because, under the terms of their contracts, these Plaintiffs will not be eligible for benefits for at least six years.

Moreover, it is not possible for these Plaintiffs – or any PACT participant at this point – to claim that PACT has failed to make any tuition payment or honor any obligation.  In fact, on May 20, 2009, at the regular meeting of the PACT Board in Montgomery, it was reported that PACT will keep paying tuition this fall and next spring.  Diel, Stan, *PACT to pay tuitions in Alabama through at least spring of 2010*, **Birmingham News**, May 21, 2009, attached as Exhibit 1.[1]  As was also reported from the PACT Board meeting, "'[t]here are ample funds to ensure payment of contracts for the coming year,' said Lt. Gov. [and PACT Board Member] Jim Folsom.  'That gives the Legislature the time to construct a solution.'"  *Id.*  At this same meeting, "[t]he [PACT] Program's actuary, Robert Crompton of Atlanta said the fund had enough money to fully pay tuition this fall and next spring 'barring a total collapse of the economy.'  Crompton

---

[1]  As explained on page 10 of the Memorandum, facts outside the allegations of the Complaint are properly considered when a defendant challenges subject matter jurisdiction.

said the fund would not run out of money until March 31, 2014." Lowry, Bob, *Board OKs Study of PACT*, **Huntsville Times**, May 21, 2009.  *Id.*

It is undisputed that the PACT Program has met all of its obligations; it has assured participants that it will do so at least through the Spring of 2010; it has sufficient funds to meet all of its obligations (assuming <u>no</u> action by the Alabama Legislature) through the year 2014 – five years from now; and the Legislature has expressed interest in fashioning a solution to PACT's projected long-term shortfall.  As a result, Plaintiffs have suffered no injury in fact, and lack Article III standing, and their claims are not ripe.  Because of Plaintiffs' lack of Article III standing and the ripeness doctrine, this Court lacks subject matter jurisdiction.  This civil action must consequently be dismissed.

Even if Plaintiffs could establish subject matter jurisdiction, the Complaint nevertheless fails to state a claim upon which relief can be granted and therefore should be dismissed pursuant to Rule 12(b)(6).  Plaintiffs purport to assert claims against all defendants for breach of fiduciary duty, negligence, wantonness, and breach of contract, and seek both compensatory and punitive damages.  However, Plaintiffs make no effort to identify the factual basis for liability as to specific defendants in particular counts.  Instead, Plaintiffs lump the defendants into one group and base their entire case on the conclusory allegation that because the total value of the PACT Trust Fund has declined the Asset Managers have failed to "prudently manage" the funds.  As recently affirmed by the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (May 18, 2009), generic allegations such as those set forth by Plaintiffs are not sufficient to state a claim, and the Complaint should be dismissed.

Indeed, this case should be dismissed for at least six independent reasons:

- First, Plaintiffs cannot meet their burden of demonstrating that they have standing to pursue their claims against the Asset Managers as required by Article III of the U.S. Constitution;

- Second, assuming Plaintiffs could establish Article III standing, their claims are clearly not ripe for adjudication as they have not suffered any injury in fact;

- Third, because of the structure of the PACT Trust Fund, these Plaintiffs lack standing to pursue their claims against the Asset Managers;

- Fourth, Plaintiffs have failed to plead each of the elements of the causes of action listed in their Complaint;

- Fifth, Plaintiffs have failed to exhaust their administrative remedies; and

- Sixth, the claims go beyond the contractual remedies to which Plaintiffs are limited.

## STATEMENT OF FACTS

The Complaint alleges claims arising out of the Plaintiffs' participation in the Alabama Prepaid Affordable College Tuition ("PACT") Program, a Section 529 college savings program administered by the State Treasurer's Office.  *See* Compl. at ¶ 17.  Exhibit  2 (Alabama PACT Program,  About  PACT  (2009),  http://www.treasury.state.al.us/PACT/about_pact.htm  (last visited May 11, 2009)).  Section 529 of the Internal Revenue Code of 1986 authorizes states to create two types of college savings programs – prepaid tuition plans and college savings plans. *Id*.  Alabama was the third state in the nation to implement a prepaid college tuition program when the PACT Program began operating in March 1990.  *Id*.  To date, PACT has provided tuition benefits to approximately 13,400 students enrolled in state as well as out-of-state colleges and universities.  *See* February 27, 2009 Letter, attached as Exhibit 3.  The Asset Managers were

retained by the PACT Board pursuant to Alabama Code Section 16-33C-6(c), which permits the PACT Board and/or an "investment manager to whom the board delegates any of its investment authority" to acquire, invest, reinvest, retain, sell, and manage the property of the PACT Trust Fund.

Plaintiff McVeigh alleges that he purchased a PACT contract (No. 9020689312) in October 2002. *See* Compl. at ¶ 19. Plaintiff Whitten alleges that she purchased a PACT contract (No. 9990561540) in September 1999. *See* Compl. at ¶ 20. According to the allegations in the Complaint, PACT obligations to Plaintiff McVeigh will mature ten (10) years from now, in the year 2019, when the beneficiary of the PACT contract he purchased reaches college age. *See* Compl. at ¶ 19. Similarly, PACT obligations to Plaintiff Whitten will mature six (6) years from now, in the year 2015, when the beneficiary of the PACT contract she purchased reaches college age. *See* Compl. at ¶ 20. In order to receive PACT benefits under a PACT contract, the beneficiary must be enrolled in an Eligible Educational Institution, as defined in the PACT contract, "within ten (10) years from the Projected College Entrance Date of the original beneficiary." 2008 PACT Rules at Section 3.03, attached as Exhibit 4.[2]

Plaintiffs allege that on or about February 27, 2009, all PACT participants received a letter from Kay Ivey, Treasurer of the PACT Board and Alabama's State Treasurer. *See* Compl. at ¶ 23. The letter notified PACT participants that the drop in the stock market during the past 14 months "had a significant negative impact on the invested assets of the PACT Trust Fund." *See* Exhibit 3. To date, the PACT Program continues to make timely tuition payments to all PACT participants currently enrolled in college. *See* PACT Board Updates dated March 13, 2009,

---

[2] Pursuant to § 2.03 of the Master PACT documents governing Plaintiffs' contracts, attached as Exhibit 8, the PACT Program Rules can be amended periodically. Accordingly, Plaintiffs' contracts are subject to the 2008 Program Rules, which are not materially different from the 1999 or 2002 Rules.

March 24, 2009, April 24, 2009, May 1, 2009, May 20, 2009, and May 29, 2009, attached as Composite Exhibit 6.

In addition, the Alabama Legislature and the PACT Board continues to actively seek ways in which to help the PACT Program meet all its contractual obligations once the outstanding contracts become due as beneficiaries reach college age.  *See* PACT Board Updates attached as Composite Exhibit 6.  To that end, on May 15, 2009, the Alabama Legislature approved Senate Joint Resolution 150.  Attached as Exhibit 7.  That Resolution asked the Retirement System of Alabama ("RSA") to "study … the financial issues of the PACT Program" and provide its findings to the Governor and the Legislature "as soon as possible."  *Id*.  The Resolution also specifically noted that "the PACT Program contracts maturing within the next three to four years are reported to be secure; however, there should be a thorough review of the financial issues facing the PACT Program and to note any evidence of the failure of the proper administration of the Program, including the short-term and long-term finances of the Program."  *Id*. at 2.  As noted above, the PACT Board has specifically stated that it will continue making all tuition payments due under the PACT Program through at least the Spring of 2010, and the PACT actuary has stated that PACT has the funds available to meet all of its obligations through 2014.  Lowry, Bob, *Board OKs Study of PACT*, **Huntsville Times**, May 21, 2009; Diel, Stan, *PACT to pay tuitions in Alabama through at least spring of 2010*, **Birmingham News**, May 21, 2009.  Articles are attached as Exhibit 1.

Plaintiffs allege that as a result of "Defendants' collective negligence, wantonness, breach of contract, and/or failure to properly administer, invest and/or manage the investments relevant to the PACT plan . . . the Plaintiffs . . . will be unable to attend college as the PACT plan intended."  Compl. at ¶ 25.  Plaintiffs allege that they:

signed a contract and made timely payments in [the] PACT plan in anticipation of receiving the following benefits:

a.   The PACT Program makes payments directly to the [college or university];

b.   The PACT four-year contract covers in-state public tuition for up to 135 semester hours, or the equivalent at institutions on a quarter or other academic term basis; …

Compl. at ¶ 18.  Notably, however, Plaintiffs do not allege that the beneficiaries of their PACT contract are currently enrolled in an Eligible Educational Institution, as defined by the PACT contract; nor do they allege that the PACT Program has failed to honor its contractual obligations to those beneficiaries by denying payment of tuition in breach of the PACT contract.  Indeed, because the beneficiaries of Plaintiffs' PACT contracts are at least six (6) years away from being college bound, they cannot allege that any of their PACT benefits have been denied.

Plaintiffs have sued the PACT Asset Managers for breach of fiduciary duty (Count One), negligence (Count Two), wantonness (Count Three), and breach of contract (Count Four). Plaintiffs' claims are premature, since there is no present injury, case, or controversy, and thus, this Court does not have subject matter jurisdiction over any of Plaintiffs' claims.  In addition, the Complaint does not state a cause of action against the Asset Managers upon which relief can be granted.  Therefore, this Court should dismiss Plaintiffs' claims in their entirety.

## STANDARD OF REVIEW

### I.   Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.

Federal courts are courts of limited jurisdiction and can adjudicate only those cases that fall within Article III of the Constitution and a congressional authorization enacted thereunder. *See Cahill v. Kendall*, 202 F. Supp. 2d 1322, 1326 (S.D. Ala. 2002).  Article III standing is treated as an issue of subject matter jurisdiction.  *See Nat'l Org. for Women, Inc. v. Scheidler*,

510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.").  When subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing sufficient facts upon which to predicate jurisdiction by a preponderance of the evidence.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Morrison v. Amway Corp.*, 323 F.3d 920, 924–925 (11th Cir. 2003), *aff'd sub nom. Morrison v. Magic Carpet Aviation*, 383 F.3d 1253 (11th Cir. 2004); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).  Once the factual basis of subject matter jurisdiction is challenged, the allegations in the complaint are not controlling; thus, the plaintiff cannot rely solely on allegations to show proper subject matter jurisdiction.  *See KVOS v. Associated Press*, 299 U.S. 269, 278 (1936); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008); *Hayden v. Blue Cross & Blue Shield of Ala.*, 855 F. Supp. 344, 347 (M.D. Ala. 1994).  Instead, the plaintiff must go beyond the pleadings to make an affirmative proof of jurisdiction.  *See KVOS*, 299 U.S. at 278.

## II.  Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State A Claim Upon Which Relief May Be Granted.

A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure goes to the sufficiency of the pleadings under Rule 8(a)(2). The Court is not limited to the allegations in the complaint, but can consider exhibits accompanying the complaint or items referenced in the pleading.  Fed. R. Civ. P. 10(c); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

More important, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Thus, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all the allegations in the complaint are true . . .." *Id.* (citations omitted). The pleading standard under *Twombly* "is one of 'plausible grounds to infer.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (*quoting Twombly*, 550 U.S. at 556) (quotes omitted). Accordingly,

> while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of the claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (internal quotes and citations omitted). "[C]onclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996). Therefore, "the plain statement" must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (quotes and alterations omitted).

The United States Supreme Court recently expounded upon its reasoning in *Twombly*, reaffirming that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (May 18, 2009). The Court explained that one of the principles underlying its decision in *Twombly* was that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Where, as here, a complaint makes purely conclusory allegations, those allegations are not entitled to any weight in determining a motion to dismiss. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Plaintiffs' allegations here fail to satisfy even the minimal burden imposed by Rule 8 of the Federal Rules.

**III.    This Court May Consider the Documents and Evidence Submitted By the Asset Managers in Support of Their Motion.**

The Asset Managers have attached several documents to their Motion to Dismiss, all of which can be considered by the Court without converting the Motion to one for summary judgment.  First, the Court may consider those documents that make up the contracts between Plaintiffs and the PACT Board and the contracts between the Asset Managers and the PACT Board because Plaintiffs refer to those documents in their Complaint without attaching them.  Because the contracts are central to Plaintiffs' claims here, this Court may look to them under Rule 12(b)(6).  Fed. R. Civ. P. 10(c); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."); *Deerman v. Fed. Home Loan Mortgage Corp*., 955 F. Supp. 1393, 1397 (N.D. Ala. 1997) (granting motion to dismiss and explaining that "[a]lthough the [document] was not attached as an exhibit to plaintiffs' complaint, it was referenced in the complaint, and is integral to some of plaintiffs' claims.  Therefore, the [document] may be considered when deciding defendant's motion to dismiss without converting the motion into one for summary judgment.") (per Blackburn, J.).  For the years 1990 through 2003, the PACT contract is defined as including the Application, the MasterPact, and the Participation and Payment Schedule.  *See* § 2.02 of the MasterPact documents attached as Exhibit 8.

Additionally, because the Asset Managers' Motion to Dismiss pursuant to Rule 12(b)(1) constitutes both a factual and facial challenge to this Court's subject matter jurisdiction, the Court may consider extraneous evidence.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.

May 8, 1981) ("*Paterson*"); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) ("*Lawrence*"); *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) ("*McMaster*"). Four principles apply to a "factual attack" on the Court's subject matter jurisdiction.  First, Plaintiffs bear the burden of proof "by a preponderance of evidence that the trial court does have subject matter jurisdiction."  *Paterson*, 644 F.2d at 523.[3]  Second, Plaintiffs are "required to submit facts through some evidentiary method" to prove that subject matter jurisdiction exists. *Id*.  Third, no presumption of truthfulness attaches to Plaintiffs' allegations in the Complaint.[4] Fourth, the existence of disputed material facts will not preclude this Court from evaluating for itself whether subject matter jurisdiction exists.[5]

As the Eleventh Circuit has held, where a Rule 12(b)(1) Motion raises a factual challenge to the Court's jurisdiction, the Court is free to consider extrinsic evidence and "weigh the evidence and satisfy itself as to the existence of its power to hear the case' without presuming the truthfulness of the plaintiff's allegations." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (*quoting Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)); *see also Stalley,* 524 F. 3d at 1232-33.  The non-contractual documents submitted as part of this Motion are submitted by the Asset Managers solely for the purposes of the Asset Managers' factual attack on the Court's subject matter jurisdiction, but not for the purposes of the Motion to Dismiss pursuant to Rule 12(b)(6).  As a result, this Court may consider those non-contractual documents in connection with the Asset Managers' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1).

---

[3] *See also Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (in a "factual attack" on subject matter jurisdiction, "plaintiff bears the burden of proof that jurisdiction does in fact exist"); *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *Dillard v. Jones*, 89 F. Supp. 2d 1362, 1368 (N.D. Ga. 2000).

[4] *Lawrence*, 919 F.2d at 1529; *McMaster*, 177 F.3d at 940.

[5] *Paterson*, 644 F.2d at 523; *Lawrence*, 919 F.2d at 1529; *McMaster*, 177 F.3d at 940.

## ARGUMENT

I.   **This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims.**

The Court lacks subject matter jurisdiction over this matter because Plaintiffs cannot establish Article III standing, and, relatedly, because their claims are not ripe for review.[6]  First, Plaintiffs lack Article III standing because no cause of action had accrued (and Plaintiffs had not incurred any damages or suffered any injury in fact) at the time the Complaint was filed. Plaintiffs have not alleged – and cannot allege consistent with Rule 11 – that they have suffered any actual injury, or indeed that they will suffer such injury in the future.  Instead, the harm that they allege is potential harm based on speculation and conjecture.   Second, the Complaint is barred by the ripeness doctrine, because the injury Plaintiffs purport to address has not occurred and may never occur depending on numerous future developments such as: changes in investment values, legislative action, action by the PACT Board, and the decisions of the named beneficiaries in this case regarding whether they will pursue a college degree from a PACT approved institution.  Because Plaintiffs have not established subject matter jurisdiction in this Court, the Complaint must be dismissed.

A.   **Plaintiffs Lack Standing to Assert Their Claims.**

The United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  One of the "landmarks, setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III . . . is the doctrine of standing. . . .  [T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

---

[6] The United States Supreme Court has explained that, "[t]he standing question . . . bears close affinity to [the] question[] of ripeness – whether the harm asserted has matured sufficiently to warrant judicial intervention. . . ." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) ("*Warth*"); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 946 n.10 (11th Cir. 2003).

(1992) ("*Lujan*") (citations omitted).   "'[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citation omitted), *cert. denied*, 126 S. Ct. 377 (2005).[7]   Because Plaintiffs invoked this Court's jurisdiction by filing this case in federal court, they bear the burden of establishing Article III standing.  *Lujan*, 504 U.S. at 561; *Koziara*, 392 F.3d at 1304.

That Plaintiffs brought this case as a purported nationwide class action does not relieve them of the obligation of establishing that they personally have Article III standing.  The United States Supreme Court has noted on several occasions that the named class representative must have standing in order to proceed with a class action.  *See, e.g., Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured . . .") (quotations and citations omitted)); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").  The Eleventh Circuit has also confirmed that a plaintiff who lacks Article III standing cannot pursue a class action.  *See, e.g., Murray v. U.S. Bank Trust Nat'l Ass'n.*, 365 F.3d 1284, 1288 n.7 (11th Cir. 2004) ("[A] plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent."); *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) ("Whether the named plaintiffs have standing to assert their claims is a 'threshold legal issue . . .'") (citations omitted)).

---

[7] *See also Nat'l Parks Conservation Ass'n. v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003) ("[B]ecause the constitutional standing doctrine stems directly from Article III's 'case or controversy' requirement, this issue implicates our subject matter jurisdiction, and accordingly must be addressed as a threshold matter . . .." (citations omitted)).

The United States Supreme Court has explained that a plaintiff must satisfy three elements to establish standing:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'". Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560-61 (citations omitted); *accord Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

In focusing on the first of these elements, the Eleventh Circuit has explained that "[a]n injury in fact cannot be an abstract injury.  A plaintiff must point to some type of cognizable harm, whether such harm is physical, economic, reputational, contractual, or even aesthetic." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (citations omitted). ("*Koziara*"); *see also Griffin v. Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987) ("Under elementary principles of standing, a plaintiff must allege and show that he personally suffered injury. . .  If he cannot show personal injury, then no Article III case or controversy exists, and a federal court is powerless to hear his grievance.") (citations omitted).  For a threatened injury to possess the necessary immediacy of the kind required to make it imminent and not merely hypothetical, the injury must be one that will occur within some fixed period of time in the future and not too far into the future.  *See Am. Civil Liberties Union v. Miami-Dade County School Bd.*, 557 F.3d 1177, 1191-93 (11th Cir. 2009).

Plaintiffs in this case fail to meet the first prong of Article III standing because the Complaint fails to allege sufficient facts necessary to demonstrate that these Plaintiffs have been injured.  In particular, nowhere do Plaintiffs allege that the PACT beneficiaries have enrolled in an eligible college or university; nor do they allege that the PACT Program has failed to honor its contractual obligations by refusing to pay the PACT beneficiary's tuition costs to which Plaintiffs' Program beneficiaries may be entitled or by failing to refund the payments made to the PACT Program on behalf of those beneficiaries.  Because the Complaint alleges <u>no</u> injury in fact, this Court lacks subject matter jurisdiction.  *Scheidler*, 510 U.S. at 255.  *See Harris v. Mexican Specialty Foods, Inc*., 564 F.3d 1301 (11th Cir. 2009); *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009).

> **B.     Plaintiffs' Claims Are Not Ripe for Adjudication.**

The Eleventh Circuit has explained that, "[t]he determination of ripeness 'goes to whether the district court had subject matter jurisdiction to hear the case.'"  *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) ("*Digital Properties*") (citation omitted).  In *Digital Properties*, the Eleventh Circuit explained the contours of the ripeness doctrine:

> The ripeness doctrine involves consideration of both jurisdictional and prudential concerns.   Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review.  Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint.
>
> The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes.   The doctrine seeks to avoid entangling courts in the hazards of premature adjudication.  The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration.   Courts must resolve whether

> there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.

*Id*. at 589 (citations and quotations omitted).[8]

The first element of standing, namely injury in fact, most often converges with ripeness; if an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, as is the case here, then the action generally will not contain the concrete injury necessary to establish standing. *See Elend v. Basham*, 471 F.3d 1199, 1204-06 (11th Cir. 2006). Predominant considerations in the ripeness analysis are: (1) the hardship to the parties withholding court consideration and (2) the fitness of the issues for judicial decision. *See Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1164 (11th Cir. 2008).

As guidance for application of the "hardship" and "fitness" prongs of the ripeness analysis, the Eleventh Circuit has considered "'whether delayed review would cause hardship to the plaintiffs . . . [and] whether the courts would benefit from further factual development of the issues presented.'" *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001) ("*Pittman*") (citations omitted). The Eleventh Circuit has also explained that "claims are less likely to be considered 'fit' for adjudication when . . . they require 'speculation about contingent future events.'" *Id*. (citation omitted).

Plaintiffs have suffered no injury as yet and may never suffer any injury. As discussed above, the PACT beneficiaries in this case are at least six (6) years away from enrollment in an eligible college or university. Whether these beneficiaries will actually suffer an injury depends, at the very least, upon the occurrence of the following future events or possibilities: (1) the

---

[8] *See also Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1322 (11th Cir. 2005); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1223-24 (11th Cir. 2004); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 n.7 (11th Cir. 2000).

named beneficiaries attend a qualified college or university; (2) the Legislature takes no action on behalf of the PACT Program during the next six years; (3) the stock market does not recover in the next six years; (4) the PACT Program dissolves and fails to provide refunds to participants; and/or (5) the PACT Program fails to make tuition payments pursuant to the PACT contracts.  In other words, Plaintiffs' claim of injury depends on future events that may or may not occur.  At this point, any allegation of injury is merely speculative.

Plaintiffs' claims are not only unfit for judicial decision, but Plaintiffs will suffer absolutely no hardship if this Court dismisses their claims.  If Plaintiffs are allowed to proceed with their unripe claims, however, the Asset Managers will find themselves litigating against hypothetical possibilities rather than immediate facts.  In *Digital Properties*, the Eleventh Circuit determined that plaintiff's "impatience led it to rush to the courthouse and present an insufficiently concrete claim."  *Digital Properties*, 121 F.3d at 591.  This is precisely the situation here, and Plaintiffs' Complaint should be dismissed.

### C.   Plaintiffs Lack Standing To Pursue Claims For Losses In the PACT Trust Fund

Plaintiffs' claims against the Asset Managers arise entirely from investment losses experienced in the PACT Trust Fund.  *See* Compl. ¶¶ 28, 31, 35, 39.  The PACT Trust Fund was established by the PACT legislation, which designated certain state officials to act as a Board of Trustees to administer the Trust Fund.  *See* Ala. Code § 16-33C-1 *et seq.*  The PACT Trust Fund is a legally cognizable trust and is subject to the general law governing trusts.  *See* Bogert, Trusts and Trustees § 246 (2007) (trusts are often established by statute for the purpose of protecting property rights);  *Riley v. Pate*, 3 So. 3d 835, 839 (Ala. 2008) (noting that the statutorily-created Alabama "Trust Fund is, insofar as its purposes are concerned, no different than a charitable trust").

With respect to the PACT Trust Fund, Plaintiffs have no status that gives them standing to sue for losses to the Trust assets. Plaintiffs bring this suit in their capacity as purchasers of a PACT Contract. *See* Compl. ¶¶ 19, 20. As PACT contract purchasers, they have specific, enumerated obligations and rights with respect to the PACT Program. In contrast, Plaintiffs have no status with respect to the PACT Trust Fund, which is merely a segregated fund created by the State of Alabama from which to pay college expenses as they become due under the terms of the PACT contract. Plaintiffs are not the grantors of the PACT Trust Fund; the State of Alabama enacted the statute creating the Trust Fund. *See* Ala. Code § 19-3B-102(16). Furthermore, Plaintiffs are not beneficiaries of the PACT Trust Fund.[9] The PACT statute identifies them only as Purchasers with certain enumerated rights under the PACT contract. *See* Ala. Code § 16-33C-3(19).

A basic tenet of trust law is that only *the trustee* has the legal capacity to bring a suit against a third party for conduct that damages or depreciates the trust assets. *See, e.g., Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849, 851 (8th Cir. 2003) (only trustee is authorized to pursue claims against third parties). Bogert's treatise, which is the leading authority on trust law,[10] states:

> The trustee has title (generally legal title) to the trust property, usually has possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct.

Bogert's Trusts and Trustees § 869 (2007).

---

[9] The PACT statute refers to the minor person whose college tuition will be paid from the PACT Trust Fund as a "Designated Beneficiary," but that designation refers to the minor person's status as the intended beneficiary of the PACT contract, and not as the beneficiary of any trust. *See* Ala. Code. § 16-330-7.

[10] The Alabama Supreme Court has relied on the Bogert treatise over 40 times, beginning as early as 1939 and as recently as 2007. *See, e.g., First Nat'l Bank of Birmingham v. Basham*, 191 So. 873, 878 (Ala. 1939); *Van Hoof v. Van Hoof*, 997 So.2d 278, 290 n.15 (Ala. 2007).

Alabama has long followed this common law rule of trusts. *See, e.g.*, *Hoglan v. Moore*, 122 So. 824, 829 (1929) (holding that only trustees could bring action to enjoin a threatened injury to trust property by a third person).[11]  A trustee is exclusively authorized to evaluate and pursue claims against third parties for losses to the trust assets. *See* Ala. Code § 19-3B-811 ("A trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust."); *see also* Restatement (Second) of Trusts § 177 (trustee must "take reasonable steps to realize on claims regarding trust assets").

Plaintiffs do not expressly assert any claim as beneficiaries of the PACT Trust Fund, nor could they do so.[12]  Even assuming *arguendo* that Plaintiffs could characterize themselves as beneficiaries of the PACT Trust Fund, beneficiary status would not be enough to confer standing to sue the Asset Managers.   As noted in the Bogert's treatise:

> Although the beneficiary is adversely affected by [the] acts of a third person, no cause of action inures to him on that account.  The right to sue in the ordinary case vests in the trustee as a representative. . . .   In the absence of special circumstances, the beneficiary is not eligible to bring or enforce these causes of action which run to his trustee.  Thus in the usual case he cannot sue a third person to recover possession of the trust property for himself or the trustee, or for damages for conversion of or injury to the trust property, or for the recovery of its income ….

---

[11] *Accord Blackburn v. Fitzgerald*, 30 So. 568, 568-69 (Ala. 1901) (trust beneficiaries have no right to sue  to enforce their equitable rights without first having moved the trustee to act and having failed to secure such action on his part); *Simmons v. Richardson*, 18 So. 245, 247 (Ala. 1895) (beneficiary could not maintain an ejectment action because she lacked legal title to the land in question, and that action must be brought by trustee); *Grady v. Ibach*, 10 So. 287, 288 (Ala. 1891) (beneficiary could not maintain action for use and occupation of land by a third party because she did not hold legal title to the property, and suit must instead be brought by trustee); *Baker v. Washington*, 1833 WL 633, at *1 (Ala. January Term, 1833) (because trustee holds legal title to trust corpus, trustee is proper party to bring suit for detinue); *Ryan v. Bibb*, 1871 WL 1049, at *1 (Ala. June Term, 1871) (trustee was proper party to maintain action for trover on behalf of the trust).

[12] In their claims for breach of fiduciary duty, Plaintiffs characterize all defendants as a "quasi trustee" or "trustee in invitum, but do not assert that Plaintiffs are trust beneficiaries. Compl. ¶ 27.

Bogert's Trusts and Trustees § 869 (2007) (emphasis added).   Thus, even if the Plaintiffs were deemed to be express or implied beneficiaries of the PACT Trust Fund, that status would not confer standing to assert claims against third parties for losses to the PACT Trust Fund assets.

Therefore, the Plaintiffs have absolutely no standing to assert claims against the Asset Managers for allegedly causing damage to the PACT Trust Fund.   In the absence of such authorization, their claims must be dismissed.  *See, e.g., Slaughter v. Swicegood,* 591 S.E.2d 577 (N.C. Ct. App. 2004) (dismissing claims against third party for trust losses because plaintiff lacked standing); *Pillsbury v. Karmgard*, 22 Cal. App. 4th 743 (Cal. Ct. App. 1994) (plaintiffs' claim against third party for trust losses dismissed for lack of standing); *Apollonari v. Johnson*, 305 N.W. 2d 565 (Mich. Ct. App. 1981) (affirming dismissal of claims against third parties for trust losses  because plaintiffs lacked standing).

Plaintiffs do not have legal capacity, and therefore do not have standing, to pursue claims against the Asset Managers for allegedly improper conduct leading to a diminution of the PACT Trust Fund assets.   Accordingly, Plaintiffs' claims against the Asset Managers should be dismissed.

## II.     The Complaint Fails to State a Claim for Relief

Even if this Court did have subject matter jurisdiction, dismissal would still be appropriate because Plaintiffs' allegations fail to state a claim for relief and fail to reach the threshold level of plausibility imposed by Rule 8 of the Federal Rules of Civil Procedure.

Plaintiffs purport to raise claims for breach of fiduciary duty, negligence, wantonness and breach of contract.  However, as to each of these counts, Plaintiffs do not bother to make any specific allegations regarding the particular wrongful acts of each specific defendant.  Instead, Plaintiffs simply throw all defendants into one general group and then mechanically set forth the

legal elements of each claim, providing nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  In fact, Plaintiffs offer less as they do not even identify which specific defendants, if any, harmed them. This method of pleading is exactly what the Supreme Court has found to be insufficient and subject to dismissal.  *Id*.  As stated by the Court, "Rule 8 does not empower [the plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."  *Id.*  Because Plaintiffs fail to set forth anything other than conclusory allegations, which should not be presumed to be true, the Complaint should be dismissed pursuant to Rule 12(b)(6).

In addition to this overarching deficiency, Plaintiffs' claims also fail for the reasons set forth below:

### A.      Count One – Breach of Fiduciary Duty

Count One attempts to state a claim for breach of fiduciary duty.  In the Complaint, Plaintiffs allege that defendants "owed a fiduciary [*sic*] as a quasi trustee or trustee *in invitum* to prudently manage, invest, and/or provide sound financial advisement" Compl. at ¶ 27, and that the defendants "breached this duty by failing to prudently manage, invest, and/or provide sounds [sic] financial advisement," Compl. at ¶ 28.

In the first instance, Plaintiffs do not properly allege the existence of <u>any</u> duty owed by the Asset Managers to these Plaintiffs.  The PACT contract into which these Plaintiffs entered is between Plaintiffs and the PACT Program.  It is undisputed that Plaintiffs do not have a contract with the Asset Managers.  Accordingly, no duty arises by virtue of a contractual relationship – because none exists.  Further, as set forth in detail below, there is no legitimate claim that Plaintiffs are third-party beneficiaries to any contract between the Asset Managers and the PACT Program.  Plaintiffs cannot point to any other basis to establish a duty owed them by the Asset

Managers.  Under the statutory scheme created by the Alabama Legislature and the PACT's contracts with the Asset Managers, the Managers owed no duty to Plaintiffs.  In the absence of any proper allegations that establish a duty owed Plaintiffs by the Asset Managers, the claim for breach of fiduciary duty must be dismissed.

Similarly, Plaintiffs have failed to allege any facts that demonstrate that any Asset Manager defendant actually breached a duty – owed to them or to anyone.  The failure to allege any specific act or omission that would have violated any alleged duty to these Plaintiffs is yet another ground for dismissing this claim.

In addition to their failure to allege facts that would give rise to a duty owed Plaintiffs, or the breach of that alleged duty, the Complaint also fails to allege any damages as a result of the alleged breach of fiduciary duty.  "A claim alleging breach of fiduciary duty sounds in tort . . . and a necessary element to be proven in an action alleging breach of duty is damages." *Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1075 (Ala. 2006) (quotations and citations omitted); *Hensley v. Poole*, 910 So. 2d 96, 106 (Ala. 2005).

In fact, Plaintiffs generally fail to provide any factual support for their damages claim in each of their four counts.  Plaintiffs simply allege that "their goal of receiving a college education … has been adversely affected and/or eliminated" and that Plaintiffs "are and/or will be unable to attend college." Compl. at ¶ 25, 32.  However, Plaintiffs do not allege that the beneficiaries of the PACT contracts they signed are enrolled in an eligible college or university, or that the PACT Program has denied payment of college tuition in violation of the PACT contract.  The existence or the amount of damages cannot rest on speculation. *Parsons v. Aaron*, 849 So. 2d 932, 949 (Ala. 2002); *Lindy Mfg. Co. v. Twentieth Century Mktg., Inc*., 706 So. 2d 1169, 1176-77 (Ala. 1997).  If damages are only imaginary or speculative, the damages are too

remote to be the basis of recovery against the defendant. *Martin v. Battisella*, --- So. 2d ---, No. 1070394, 2008 WL 5047647, at *6 (Ala. Nov. 26, 2008). Therefore, even if Plaintiffs were able to prove the facts alleged in the Complaint, they cannot prove the elements necessary to state a claim for breach of a fiduciary duty, and Count One should be dismissed.

### B.      Count Two – Negligence

The plaintiff in a negligence action must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate case of the plaintiff's loss or injury. *See DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008). The absence of any one of the four **required** elements of negligence "renders a complaint bad or the evidence insufficient." *Franklin v. City of Athens*, 938 So. 2d 950, 953 (Ala. Civ. App. 2005), *aff'd*, 938 So. 2d 959 (Ala. 2006). Moreover, in order to maintain a negligence claim, "one *must* point to the existence of a duty on the part of the defendant." *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 909 (Ala. 2004) (emphasis added).

In Count Two, Plaintiffs merely make allegations that parrot the allegations set forth in Count One. Plaintiffs allege, without providing anything other than conclusory statements, that defendants "owed a fiduciary [*sic*] as a quasi trustee or trustee *in invitum* to prudently manage, invest, and/or provide sound financial advisement." Compl. at ¶ 30, and that the defendants "breached this duty by failing to prudently manage, invest, and/or provide sound financial advisement," Compl. at ¶ 31. As noted above, however, Plaintiffs fail to allege any facts that would give rise to a duty owed them by the Asset Managers. Further, Plaintiffs fail to allege facts that would, if true, demonstrate a breach of any duty owed Plaintiffs. Finally, Plaintiffs fail to properly allege that they have suffered any damage. Therefore, the allegations in Count Two

are insufficient to raise Plaintiffs' negligence claim above the speculative level, and the claim must be dismissed.

### C.        Count Three – Wantonness

Wantonness is defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."  Ala. Code § 6-11-20(b)(3).  Wanton conduct is the conscious doing of some act or the omission of some duty by one who has knowledge of the existing conditions, and who is conscious that injury will likely and probably result from the doing of such act or omission of such duty.  *See Rommell v. Auto. Racing Club of Am., Inc*., 964 F.2d 1090, 1097 (11th Cir. 1992) (applying Alabama law).  A finding of wanton conduct must be based upon facts beyond mere negligence – even "gross negligence is negligence and not wantonness."  *Smith v. Roland*, 10 So. 2d 367, 370 (Ala. 1942).

Plaintiffs in this case, however, have alleged no facts that could support a claim for negligence, let alone one meeting the higher burden required by a wantonness claim.  In Count Three, as in Counts One and Two, Plaintiffs attempt to state a claim for wantonness by alleging that the defendants "breached [their] duty by wantonly failing to prudently manage, invest and/or provide sound financial advisement decisions…"  Compl. at ¶ 35.  Plaintiffs not only fail to allege knowledge and conscious doing, but they also fail to point to the source of the alleged duty.  Once again, aside from conclusory allegations claiming that Plaintiffs "are and/or will be unable to attend college," Compl. at ¶ 36, Plaintiffs have pled no factual basis for their claim of damages.  As a result, the allegations in Count Three are insufficient to state a claim for negligence, much less a claim for wantonness.

### D.        Count Four – Breach of Contract

In Count Four of the Complaint, Plaintiffs attempt to state a claim for breach of contract either directly through the Asset Managers' contracts with the PACT Board of Directors or as the

intended third party beneficiaries of these contracts.  *See* Compl. at ¶ 38-40.  To prevail on a breach of contract claim, a plaintiff is required to prove: (1) the existence of a valid contract binding the parties in the action; (2) the plaintiffs' own performance under that contract; (3) the defendant's nonperformance; and (4) damages.  *See Cook's Pest Control v. Rebar*, --- So. 2d ---, Nos. 1050029, 1050128, 2009 WL 418074, *10 (Ala. Feb. 20, 2009).

### 1.    Plaintiffs Have No Contract With the Asset Managers.

As noted throughout this Memorandum, Plaintiffs have no contract with the Asset Managers.  The PACT contracts into which Plaintiffs entered are between Plaintiffs and the PACT Program.  The Asset Managers and their obligations and duties are not mentioned anywhere in the PACT contract.  Similarly, the contracts into which these the Asset Managers entered are between the PACT Board and the Managers.  PACT participants, such as these Plaintiffs, are not mentioned in the contracts between the Managers and the Board, nor are any duties to PACT participants – express or implied – contained in those contracts.  Because Plaintiffs cannot demonstrate the existence of a contract, their claims for breach of contract must fail.

### 2.    Plaintiffs, as Plan Participants, are not third-party beneficiaries to the contracts between the PACT Board and the Asset Managers, and the Asset Managers owed no duty to Plaintiffs.

The Asset Managers entered into contracts with the PACT Board that set forth the Asset Managers' duties and obligations to the PACT Program.  Plaintiffs are not third-party beneficiaries to these contracts and, therefore, have no right to sue the Asset Managers based on these contracts.[13]  To recover as third-party beneficiaries, Plaintiffs must allege "(1) that the

---

[13] It appears that Plaintiffs themselves do not believe that the contracts between the PACT Program and the Asset Managers form the basis of this lawsuit or any duty to the Plaintiffs, contractual or otherwise, in that those contracts all provide that the sole venue for any dispute is in Montgomery County.  Investment Management Agreement § 15

contracting parties intended, at the time the contract was created, to bestow a **direct benefit** upon a third party; (2) that the complainant was the intended beneficiary of the contract; and (3) that the contract was breached."   *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002) (emphasis added).  Plaintiffs cannot satisfy any of the three prongs of the *Miller* test.

Plaintiffs cannot satisfy the first prong of the *Miller* test because neither the Asset Managers nor the PACT Board intended to bestow a *direct* benefit on Plaintiffs. "In determining the parties' intent, [the Court] must first look to the contract itself, because, while '[t]he intention of the parties controls in construing a written contract,' 'the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous.'"   *Id.* (quoting *Loerch v. Nat'l Bank of Commerce*, 624 So. 2d 552, 553 (Ala. 1993)).  Without any supporting authority, Plaintiffs assert that they are "third-party beneficiaries to any and all contracts between the State of Alabama and/or the PACT Board of Directors." Compl. ¶ 40.  Plaintiffs, however, have not and cannot actually demonstrate that they are third-party beneficiaries using the plain, unambiguous language of the contracts between the Asset Managers and the PACT.  In fact, the plain, unambiguous language of those contracts makes clear that Plaintiffs were *not* intended beneficiaries:

> **Beneficiary of Agreement:**  The execution and performance of this Agreement is
> for the benefit of the Trust Fund and ***not for any other person*** or entity.

*See* Investment Management Agreements attached as Exhibit 8.   The contracts expressly disavow any third party beneficiary.  Alabama courts have repeatedly enforced such provisions. *See, e.g., Watson v. Water Works Bd. of Birmingham*, 480 So. 2d 1190, 1193 (Ala. 1985) (holding that Plaintiff bondholders were not third-party beneficiaries of an indenture agreement

---

attached as Exhibit 8.  Thus, had Plaintiffs believed that the Asset Managers' contracts provided a basis for this lawsuit, they would not have filed this action in the Northern District of Alabama.

between Defendant and City of Birmingham in light of agreement's beneficiary disclaimer clause); *Whitehead v. USA-One, Inc.*, 595 So. 2d 867, 869 (Ala. 1992) (finding that Defendant security company had no contractual duty to Plaintiff apartment residents in light of third-party beneficiary disclaimer).   The language of the contracts makes it clear that the parties did not intend to bestow a benefit on *any* third party, much less Plaintiffs here, and as a result, Plaintiffs cannot satisfy the first prong of the *Miller* test.

Thus, Plaintiffs fail on the second prong of the *Miller* test as well—Plaintiffs are not intended beneficiaries of the contracts between the Asset Managers and the PACT Board.   "A beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of a promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."   *Rumford v. Valley Pest Control, Inc.*, 629 So. 2d 623, 630-31 (Ala. 1993) (citation and quotations omitted).   Here, recognizing an alleged right of Plaintiffs to performance of the contracts between the Asset Managers and the PACT Board does nothing to effectuate the intentions of the Asset Managers and the PACT Board in entering into those contracts.   Moreover, contractual performance by the Asset Managers will not directly satisfy the PACT's obligation to pay money on behalf of Plaintiffs or any Plan Participant.   The contractual arrangement between the PACT Board and Plaintiffs is separate and apart from the contracts between the PACT Board and the Asset Managers.   Indeed, Plaintiffs—whose interest is capped at the cost of tuition for a specified number of semesters—are not necessarily impacted by a decrease in the value of the trust, and they will never benefit from an increase in the value of the trust.   *See* Master PACT § 3.01   Plaintiffs, by both express contractual language and actual

application, were not intended beneficiaries of the contractual arrangements between the Asset Managers and the PACT Board.

Finally, Plaintiffs cannot satisfy the third prong of the *Miller* test, as they cannot show that the Asset Managers have actually breached their contract with the PACT Board.  *Miller*, 833 So. 2d at 24.  The contracts entered into between the PACT Board and the Asset Managers did not guarantee the performance of the market or the future viability of the PACT Program.  Under their contracts with the PACT Board, each Asset Manager is responsible for managing a portion of the Trust Fund's assets in accordance with the Investment Policy incorporated into the Asset Manager's contract.  Investment Management Agreements at ¶ 4(a) attached as Exhibit 8. Plaintiffs have not alleged that the Asset Managers failed to follow the Investment Policy or meet any other contractual obligation to PACT.

Because Plaintiffs have failed to satisfy any aspect of the *Miller* test, they cannot sue the Asset Managers as third-party beneficiaries, and their claims must be dismissed.  *Sabeta v. Baptist Hosp. of Miami, Inc*., 410 F. Supp. 2d 1224, 1233 (S.D. Fla. 2005) ("[W]hen members of the public bring suit against promissors who contract with the government to render a public service . . . [they] are considered to be incidental beneficiaries unless they can show a direct right to compensation.  In other words, members of the general public, as incidental beneficiaries of government contracts, have no right to enforce the contract or seek damages for its breach." (citation and quotations omitted)).

### 3.    Plaintiffs Have Suffered No Damages

In this case, Plaintiffs can point to no set of facts that would show that they have suffered damages as a result of the Asset Managers' alleged actions.  Plaintiffs do not allege that the beneficiaries of the PACT contracts are enrolled in an eligible educational institution, nor have

Plaintiffs alleged that the PACT Program breached its contractual obligations by failing to provide tuition payments.  Moreover, Plaintiffs have not alleged actual damages.  The alleged beneficiaries in this case are at least six (6) years away from enrollment in an eligible college or university.  Therefore, Plaintiffs' claim in paragraph 40 that they have been damaged "to the extent that their goal of receiving a college education … has been adversely affected and/or eliminated," is merely speculative.

III.    **Plaintiffs' Claims Are Otherwise Barred**

In addition to the deficiencies in their pleadings, Plaintiffs' claims are barred by the following doctrines.

A.    **Plaintiffs Have Failed to Exhaust Their Administrative Remedies.**

Plaintiffs are not entitled to bring this cause of action because they have failed to exhaust their administrative remedies.  *Haitian Refugee Ctr., Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989) ("The general rule is that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued.").

The Program Rules make clear that "[a]ny aggrieved Purchaser or entity desiring to petition for relief from the Rules, may do so by submitting a written notarized petition to the Board.  The response to the petition will be in writing to the Petitioner and will be made within ninety (90) days of receipt."  2008 Rules § 11.0, attached as Exhibit 4.  Accordingly, Plaintiffs should have petitioned the Board under Section 5 of the Rules to address their concerns over future tuition benefits before filing this lawsuit.  Plaintiffs never petitioned the Board, however, and none of the traditional exceptions to the exhaustion requirement applies.[14]

---

[14] *See Ex parte Lake Forest Prop. Owners' Ass'n*, 603 So. 2d 1045, 1046-47 (Ala. 1992) ("The doctrine does not apply when (1) the question raised is one of interpretation of a statute, (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact, (3) the exhaustion of administrative remedies would be futile and/or the available remedy is inadequate, or (4) where there is the threat of

Moreover, under Ala. Code Section 16-33C-5, the Board, as an agent of the State, has been granted the "powers necessary or convenient to carry out the purposes and provisions" of the PACT Program, including the express power to "define the terms and conditions of and enter into PACT contracts . . . ." and "establish other policies, procedures, and criteria necessary to implement and administer" the plan. Ala. Code § 16-33C-5(9) & (11). Thus, in exercising these powers, the Board has included a petition requirement in the terms of the PACT contract. That remedy, which clearly exists, must be explored prior to seeking a judicial hearing. Plaintiffs have failed to comply with this requirement, and their suit should be dismissed until such time as they have properly petitioned the Board. [15]

### B.    Plaintiffs Are Limited to Their Contractual Remedies.

The PACT contracts into which Plaintiffs entered  -- which form the basis of the claims in this action – are between Plaintiffs and the PACT Program, and not the Asset Managers.  In fact, none of the Asset Managers are parties to any contract with these Plaintiffs, nor are there any duties owed to Plaintiffs by the Managers in the contracts between the Asset Managers and the PACT Program.  Despite this undeniable fact, Plaintiffs have brought several claims that are

---

irreparable injury."). Here, there is no statutory interpretation implicated; Plaintiffs have failed to allege the futility or inadequacy of the administrative remedy; and there is no threat of irreparable injury.

[15] Should the Court determine that the exhaustion doctrine does not apply, the doctrine of primary jurisdiction, nevertheless, counsels in favor of suspending judicial process until the Board is given the opportunity to resolve these matters. *See Birmingham Hockey Club, Inc. v. Nat'l Council on Comp. Ins., Inc.*, 827 So. 2d 73, 82 (Ala. 2002) (citations and quotations omitted). "The doctrine of primary jurisdiction implies that matters entrusted by the legislature to an administrative agency, ought first be considered by that agency. Thus when a controversy arises as to how an agency is conducting its affairs, a demand for corrective action first should be made to that agency. . . ." *Id.* at 83. Several important considerations underlie this doctrine as it allows the court to:  (1) "insure uniformity and consistency in dealing with matters entrusted to an administrative body"; (2) determine "whether referral to an agency is preferable because of its specialized knowledge or expertise in dealing with the matter in controversy"; and (3) determine "whether initial review of the controversy by the administrative body will either assist a court in its adjudicatory function or perhaps alleviate entirely the need for resort to judicial relief" *Fraternal Order of Police, Strawberry Lodge No. 40 v. Entrekin*, 314 So. 2d 663, 671-72 (Ala. 1975). All three purposes are served here where uniformity and consistency are necessary; the Board has specialized knowledge and expertise; and the Board may alleviate the need for any court action. The Court, therefore, has the option of (1) dismissing the case with prejudice or (2) staying the action, retaining jurisdiction and referring the matter to the Board for resolution. *Id.* at 84. Regardless, the Board should be given the opportunity to resolve these matters before Court action is invoked.

based in whole or in part on their PACT contracts.  Because Plaintiffs bring suit under the terms of their contract, the terms contained in those contracts limiting Plaintiffs' remedies must be applied.

Alabama recognizes the ability of parties to contractually limit available remedies.  *See, e.g.*, *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So.2d 922, 925-26 (Ala. 1994); *Central Mining, Inc. v. Simmons Mach. Co., Inc.*, 547 So. 2d 529, 531 (Ala. 1989).  Indeed, "[t]he factfinder must find that a limitation of remedies clause fails in its essential purpose or is unconscionable before it can award damages other than as provided in the limitation."  *Burbic Contracting Co., Inc. v. Cement Asbestos Products Co*., 409 So. 2d 1, 5 (Ala. 1982).  Thus, unless the limiting provision "fails in its essential purpose" or can be deemed "unconscionable," the Court must enforce the limitation.

Here, the PACT Rules expressly reserve certain rights for the Purchaser, defined as "any adult person . . . eligible to purchase a Contract and who is obligated to make Contract payments and Administrative Fee payments in accordance with the Contract"  Master PACT § 2.05 (attached as Exhibit 8), limiting the available remedies:

> Rule 6.02 Purchaser's Rights—The following are rights reserved strictly for the Purchaser:
>
> (1)  ***Voluntary cancellation*** of the PACT Contract or reinstatement;
> (2)  ***Right to any Refund***;
> (3)  Right to make changes to the PACT Contract;
> (4)  Right to restrict the use of PACT Contract benefits;
> (5)  On-line access to the PACT Account(s)

2008 Rules § 6.02 attached as Ex. 4 (emphasis added)).  This reservation of rights is in full accord with Alabama Code Section 16-33C-7(10), which requires that each PACT contract set forth "*[a]ll other rights* and obligations of the purchaser and the PACT Program." (emphasis added).  Thus, Plan Participants are contractually limited to the remedies set out, pursuant to

statute, in the PACT contract—voluntary cancellation and a refund ("Redemption Value") equal to "the sum of PACT Contract payments made, less any Administrative Fees and benefits paid, plus Interest, as of the date of cancellation," 2008 Rules §§ 9.01; 1.08, attached as Exhibit 4. Because Plaintiffs improperly seek damages outside this contractually mandated remedy, their lawsuit should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Plaintiffs' Complaint must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for its failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

INTECH Investment Management LLC

/s Robert K. Spotswood
Robert K. Spotswood
Michael T. Sansbury

OF COUNSEL:

SPOTSWOOD SANSOM & SANSBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 986-3621
Facsimile: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com

Luca Bronzi

HOGAN & HARTSON LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone:  (305) 459-6621
Facsimile:  (305) 459-6550
lrbronzi@hhlaw.com

Rhumbline Advisers

/s Edward A. ("Ted") Hosp
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com


Michael A. Collora
Ariatna Villegas-Vazquez
DWYER AND COLLORA
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Telephone:  (617) 371-1033
Facsimile:  (617) 371-1037
mcollora@dwyercollora.com
avillegas-vazquez@dwyercollora.com

Earnest Partners, LLC

/s Edward A. ("Ted") Hosp
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

John Rock
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 492-6948
Facsimile: (612) 340-2868
rock.john@dorsey.com

Turner Investment Partners Incorporated

/s Jere F. White, Jr.
Jere F. White, Jr.
William H. Brooks
Brooke G. Malcom

OF COUNSEL:

LIGHTFOOT FRANKLIN WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200
Telephone:  (205) 581-0700
Facsimile: (205) 581-0799
jwhite@lightfootlaw.com
wbrooks@lightfootlaw.com
bmalcom@lightfootlaw.com


Michael W. McTigue
Richard E. Coe
DRINKER BIDDLE
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2751
Facsimile:  (215) 988-2757
Michael.McTigue@dbr.com
Richard.Coe@dbr.com

Acadian Asset Management LLC

/s Edward A. ("Ted") Hosp
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

Principal Global Investors, LLC

/s Luther M. ("Rusty") Dorr, Jr.
Luther M. ("Rusty") Dorr, Jr.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone:  (205) 254-1030
Facsimile:  (205) 254-1999
rdorr@maynardcooper.com

Perry A. Napolitano
REEDSMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
pnapolitano@reedsmith.com

Douglas K. Spaulding
REEDSMITH LLP
1301 K Street, N.W.
Suite 1300 East Tower
Washington, DC 20005
Telephone:  (202) 414-9235
Facsimile:  (202) 414-9299
dspaulding@reedsmith.com

Western Asset Management Company

/s Edward A. ("Ted") Hosp
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

Robert D. Eckinger
ADAMS AND REESE LLP
2100 Third Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 250-5011
Facsimile:  (205) 250-5034
Robert.eckinger@arlaw.com

Marc T.G. Dworsky
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
Telephone:  (213) 683-9256
Facsimile:  (213) 683-5156
marc.dworsky@mto.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the above and foregoing Defendant Asset Managers' Memorandum of Law in Support of their Motion to Dismiss has been electronically served upon counsel for all parties who are CM/ECF registrants and/or by placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 2nd day of June, 2009, to:

Donald W. Stewart
Donald W. Stewart, P.C.
P. O. Box 2274
Anniston, AL 36202

Andrew P. Campbell
Leitman, Siegal, Payne & Campbell, P. C.
2100A Southbridge Pkwy Ste 450
Birmingham, AL 35209-7706

Dagney Johnson Walker
Johnson and Walker, LLC
2100 3rd Avenue North, Suite 810
Birmingham, Alabama 35203

Michael A. Burger
Grenen & Birsic, P.C.
One Gateway Center, 9th Floor
420 Fort Duquesne Boulevard
Pittsburgh, Pennsylvania 15222

Matthew H. Lembke
Bradley Arant Boult Cummings LLP
P. O. Box 830709
Birmingham, AL 35283-0709

/s Edward A. ("Ted") Hosp
Of Counsel