FILED

2009 Aug-03 PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRIAN A. MCVEIGH et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV-09-0685-S** |
| | ) | |
| **CALLAN ASSOCIATES,** | ) | |
| **INCORPORATED et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ASSET MANAGERS' JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS ON THE STANDING ISSUES SET OUT IN THE COURT'S JULY 27, 2009 ORDER

Pursuant to the Court's July 27, 2009 Order (DE 39), Defendants INTECH Investment Management LLC, Rhumbline Advisers, Earnest Partners, LLC, Turner Investment Partners Incorporated, Acadian Asset Management LLC, Principal Global Investors, LLC and Western Asset Management Company (the "Asset Managers") hereby submit this joint supplemental brief in support of their Motion to Dismiss (DE 16 & 17), addressing the Plaintiffs' right to assert claims regarding the PACT Program under applicable Alabama trust law, the PACT statutes, or the PACT contracts.[1]

---

[1] Pursuant to the July 27, 2009 Order (DE 39), this Brief will not address the other arguments that the Asset Managers have asserted in their Motion to Dismiss and supporting brief. However, because Plaintiffs can allege neither that the PACT Program has failed to meet any obligation to them, nor that Plaintiffs have sought and been denied a refund, Plaintiffs have suffered no actual injury and therefore lack Article III standing. Furthermore, although the Plaintiffs indicated an intention to amend their Complaint during the July 27, 2009 teleconference with the Court, for the purposes of this opening brief, the Asset Managers will address the Complaint as originally pled with the exception of addressing Plaintiffs' assertion in the Joint Report on Discovery and Scheduling (DE 35 at 3) that they are beneficiaries of the PACT Trust Fund.

## INTRODUCTION

The Plaintiffs' claims against the Asset Managers in this lawsuit arise from investment losses experienced in the statutory trust fund created to satisfy the payment obligations of the PACT Program, a tuition assistance program created and administered by the State of Alabama. (*See* Compl. ¶ 23.)  Specifically, Plaintiffs allege that "the Plaintiffs and/or other PACT contract holders and/or other PACT third-party beneficiaries are and/or will be unable to attend college as the PACT plan intended."  (*See id.* ¶ 25.)  Plaintiffs' Complaint asserts claims against the Asset Managers for breach of fiduciary duty, negligence, wantonness, and breach of contract.  (*See generally id.*)  Although not initially asserted in their Complaint, Plaintiffs now appear to contend that they are direct beneficiaries of the PACT Trust Fund and, therefore, may assert claims in that capacity.[2]  Plaintiffs' evolving theories of recovery are based upon some combination of the PACT contracts, the PACT statutes, and Alabama trust law.  As discussed below, none of these three areas gives the Plaintiffs any right to pursue claims directly against the Asset Managers.

The statutes setting up the PACT Program establish the PACT Board as the trustee of the PACT Trust Fund and the PACT Program itself as the beneficiary.[3]  Thus, under the Alabama

---

[2]  Although not overtly stated in their initial Complaint, Plaintiffs' Position on Jurisdictional Discovery to Respond to the Rule 12(b)(1) Motion, as set out in the Joint Report on Discovery and Scheduling (DE 35), indicates that Plaintiffs now believe that they have standing arising "out of their status as a PACT beneficiary."  (*Id.* at 1-3.)  Specifically, they claim to have a direct interest in the PACT Trust corpus as conferred by some unspecified documents executed with the State Treasurer.  (*Id.* at 2.)

[3]  In its supplemental brief filed pursuant to this Court's order, Defendant Callan Associates Inc. argues that the PACT Board is the beneficiary of the PACT Trust Fund.  (DE 42 at 7-9.)  Although the Asset Managers agree that there are some discrepancies in the use of certain defined terms in the enabling legislation, it is not clear that the terms "PACT Program" and "PACT Board" are used interchangeably.  (*See id.* at n.2.)  Nevertheless, it is clear that the Legislature intended to bestow beneficiary status on some combination of the PACT Program

(*Footnote continued on next page*)

Code and the basic principles of Alabama trust law, the Plaintiffs' lack standing to pursue claims against third parties such as the Asset Managers. Additionally, because the Plaintiffs have no contract with the Asset Managers and are not third party beneficiaries to the contracts between the PACT Board and the Asset Managers, Plaintiffs lack standing to pursue any contract-based claims. They simply have no standing to assert claims against the Asset Managers.

## FACTUAL BACKGROUND

The facts underlying this litigation are set out more fully in the Defendant Asset Managers' Memorandum of Law in Support of Their Motion to Dismiss (DE 17 at 1-7). However, because the Court requested that this brief focus on the law governing the PACT contracts and the contracts themselves, a brief description of the governing law and the Plaintiffs' PACT contracts follows.

### The PACT Legislation

In 1989, the Alabama Legislature passed the Wallace-Folsom Prepaid College Tuition Trust Fund with the stated purpose of establishing an educational trust fund to "encourage timely financial planning for higher education by the creation of prepaid tuition contracts." Ala. Code § 16-33C-1 (1989). Now called the Wallace-Folsom College Savings Investment Plan (the "Plan"), as an agency and instrumentality of the State of Alabama, the Plan has been expanded to include both the Alabama Prepaid Affordable College Tuition (PACT) Program and the Alabama

---

(*Footnote continued from previous page*)
and the PACT Board acting on behalf of the PACT Program. Likewise, it is clear that the Legislature *did not* intend to bestow beneficiary status on PACT Program Participants like Plaintiffs here. Thus, regardless of whether the Court reads the statute to establish the PACT Program, the PACT Board, or some combination of the two as the beneficiary of the PACT Trust Fund, there can be no question that Plaintiffs are not the intended beneficiaries. The statute expressly limits PACT Program Participants—like Plaintiffs—to those benefits "for which he or she contracted." Ala. Code § 16-33C-6(b).

College Education Savings (ACES) Program.  Ala. Code §§ 16-33C-2.1.  These programs exist as "two alternatives to assist individuals in paying costs and expenses of attending colleges and universities and thereby encourage students to attend colleges and universities."  *Id.* § 16-33C-1.

Under the PACT Program, "Purchasers" (also referred to as "Participants") enter into "contracts [with the PACT Board] for the future payment of tuition and mandatory fees at eligible educational institutions," and make periodic payments toward the purchase of a contract over a defined period of time.  *Id.* §§ 16-33C-3(7) & (19); -6(a).  Under the ACES Program, "Contributors" "open savings accounts according to savings agreements for the payment of qualified higher education costs for a [D]esignated [B]eneficiary at eligible educational institutions," and make periodic payments to the account.  *Id.* §§ 16-33C-3(8)-(9); -10(a).  Both programs are meant to assist a "Designated Beneficiary," defined as "[t]he person designated at the time the PACT contract is entered into or ACES savings account opened as the person who benefits from payments of qualified higher education costs at eligible educational institutions, or that person's replacement."[4]  *Id.* § 16-33C-3(10).

Both programs are administered by a Board of Directors that serves as trustee of the two trust funds—the PACT Trust Fund and the ACES Trust Fund.  *Id.* § 16-33C-3(6).  The statutes authorize the Board to, among other things, (1) contract with Purchasers under the PACT Program, (2) enter into savings agreements under the ACES Program, and (3) define the terms and conditions of PACT Contracts and ACES savings agreements.  *Id.* §§ 16-33C-5(3), (5), (6)

---

[4] The term "beneficiary" appears twenty-three (23) times in the legislation creating the PACT and ACES programs.  In each of those twenty-three uses, the term references a "Designated Beneficiary"—as expressly defined by Ala. Code § 16-33C-3(10).  Nowhere in the statute is the term "Designated Beneficiary" used in relation to either trust; the term is strictly used to reference the child benefiting from the PACT Contract.  The term "Designated Beneficiary" has no meaning vis-à-vis the PACT Trust Fund.

& (9).  The Board is also responsible for managing the property of both trust funds.  *Id.* §§ 16-33C-6(d); -10(e).  The Board has the power to delegate any of its investment authority to a third party, but whoever is charged with managing the funds—be it the Board or the Board's designee—must "exercise the judgment and care under the circumstances then prevailing which persons of prudence, discretion, and intelligence exercise in the management of their own affairs."  *Id.*  So long as those charged with managing the funds act within this standard of care, they shall not be "personally liable for losses suffered by [either program] on investments made pursuant to this chapter."  *Id.*

The PACT Trust Fund was expressly created "as the source for payment of the PACT Program's obligations under PACT contracts."  *Id.* at 16-33C-6(b).   The statute provides that, "[i]n order to provide funds to enable the PACT Program to pay amounts due under the terms of its PACT contracts, there is irrevocably pledged to that purpose from the PACT Trust Fund the monies necessary to pay those amounts."  *Id.*  Although contract payments are deposited into the PACT Trust Fund to enable the Program to fulfill its contractual obligations, the statute makes clear that a Participant is *only* entitled to those benefits "for which he or she contracted."  *Id.*  If gross earnings are obtained on the funds held in the PACT Trust Fund, those earnings may be used by the Board to satisfy any investment or administration costs of the Program, and if no outstanding costs exist, the earnings are reinvested in the trust.  *See id.* § 16-33C-6(d).  The fact that PACT Purchasers have no claim to the assets of the PACT Trust Fund is also apparent from the provision governing the dissolution of the PACT Program.  If the PACT Program is dissolved, any remaining balance after all obligations have been satisfied is to be transferred to the Alabama Commission on Higher Education or its successor.  *Id.* § 16-33C-9.  Pact Program Purchasers have no stake in any remaining balance of the PACT Trust Fund.

The ACES Trust Fund is different.  Under that program, "[f]unds contributed to the savings accounts established pursuant to the ACES Program are held in trust by the board for the sole benefit of the [C]ontributor and [D]esignated [B]eneficiary."  *Id.* § 16-33C-10(b). Accordingly, all Contributors and their Designated Beneficiaries are the beneficiaries of the ACES Trust Fund and are, therefore, entitled to all "amounts on deposit in or accrued to the respective savings account." *Id.*  Thus, under the ACES dissolution provision, any remaining funds, after all program obligations have been satisfied, are to be "returned to contributors according to savings agreements."  *Id.* § 16-33C-13.

### The PACT Contracts

Plaintiff McVeigh purchased a PACT contract in October 2002 and Plaintiff Whitten purchased a PACT contract in September 1999.  (*See* Compl. ¶¶ 19, 20.)  Plaintiffs' PACT contracts are with the PACT Board, acting on behalf of the PACT Program.  *See* Ala. Code § 16-33C-3(17) ("PACT CONTRACT.  A contract entered into by the [B]oard and a [P]articipant in the PACT Program")*; see also* MasterPACT 1999 at § 2.02 (attached as Exhibit 7 to Defendant Asset Managers' Memorandum of Law in Support of Their Motion to Dismiss (DE 17 at Ex. 7)) (stating that the "PACT Contract" is between "the PACT Contract Purchaser and the State Treasurer of the State of Alabama, as chairperson of, and on behalf of, the Board").[5]   The Plaintiffs and the PACT Board (on behalf of the PACT Program) are the only parties to their PACT contracts.  The Asset Managers are not parties to the PACT Contracts and have assumed neither fiduciary nor contractual obligations under those contracts.

---

[5] The PACT Program used MasterPACTS from 1990 to 2004.  Since 2004, Disclosure Statements have been used in lieu of the MasterPACTS.

**The Asset Manager Contracts**

Pursuant to Alabama Code § 16-33-6(d), which permits the PACT Board to delegate its authority to acquire, invest, reinvest, retain, sell, and manage the property of the PACT Trust Fund to a third party, the PACT Board entered into various contracts with the Asset Managers. (Attached as Exhibit 8 to Defendant Asset Managers' Memorandum of Law in Support of Their Motion to Dismiss (DE 17 at Ex. 8).)  It is undisputed that Plaintiffs are not parties to these contracts and that these contracts represent the only contractual duties undertaken by the Asset Managers.

## ARGUMENT

I. **Plaintiffs do not have the right to assert PACT-related claims under any "beneficiary of the PACT Trust Fund" argument.**

Plaintiffs lack standing to pursue claims as purported "beneficiaries" of the PACT Trust Fund.  Plaintiffs' rights are limited to those enumerated in the PACT Contract, *see* Ala. Code § 16-33C-6(b), and they have no status with respect to the PACT Trust Fund at all.  The provisions establishing the PACT Program make clear that the Program itself is the designated beneficiary of the PACT Trust Fund.  And, furthermore, it is a basic tenet of trust law that only the trustee— here the PACT Board—can bring suit against a third party for conduct that allegedly damages or depreciates the trust.

A. **The sole beneficiary of the PACT Trust Fund is the PACT Program, not the Plaintiffs.**

Numerous provisions in the Wallace-Folsom College Savings Investment Plan Act, Ala. Code § 16-33C-1 et seq., make clear that the *beneficiary* of the PACT Trust Fund is the *PACT Program* itself.  The PACT Trust Fund is administered by the PACT Board as Trustee for the benefit of the PACT Program.  The Plan was created "as an agency and instrumentality of the

State of Alabama" and consists of two different programs—the Alabama College Education Savings Program (ACES Program) and the Alabama Prepaid Affordable College Tuition Program (PACT Program). *Id.* § 16-33C-2.1. Thus, each of these programs is "an agency and instrumentality" of the State and, therefore, qualifies as a "person" under the Alabama Uniform Trust Code eligible to be the beneficiary of a trust. Ala. Code §§ 19-3B-103(3)(a) & (10).

In order to be a beneficiary of a trust, the settlor of the trust must "manifest an intention to give [that individual] a beneficial interest." Restatement (Second) of Trusts § 127 (1957). Here, there is no question that the State, through the enabling legislation, is the settlor of the PACT Trust Fund. In establishing the trust, the State made clear that the PACT Trust Fund was created to provide "the source for payment of <u>the PACT Program's obligations</u> under PACT Contracts." Ala. Code § 16-33C-6(b) (emphasis added). The PACT Trust Fund was created *for the benefit* of the PACT Program. The enabling legislation reveals the PACT Program is the sole beneficiary of the PACT Trust Fund in two distinct ways. First, the provisions establishing the PACT Program explicitly state that the purpose of the trust is to fulfill debts and obligations undertaken by the PACT Program.[6] Second, a comparison of the PACT Program enabling legislation with the ACES Program enabling legislation demonstrates that the Legislature *could* have made PACT Program Participants beneficiaries of the PACT Trust Fund—as was expressly done in the ACES Program—but elected not to do so.[7] The PACT Trust Fund was created for the sole benefit of the PACT Program; Plaintiffs have no claim to the PACT Trust Fund whatsoever.

---

[6] *See supra* pp 4-5.

[7] *See supra* pp 5-6.

**1.      The PACT Program is the statutorily intended beneficiary.**

The PACT Program statute makes clear:  "In order to provide funds <u>to enable *the PACT Program* to pay amounts due under the terms of *its* PACT contracts</u>, there is irrevocably pledged to that purpose from the PACT Trust Fund the monies necessary to pay those amounts."  *Id.* § 16-33C-6(b) (emphasis added).   Thus, all monies in the PACT Trust Fund are *irrevocably* pledged to fulfill debts and obligations of the PACT Program.  Any gross earnings on the trust principal also go to the direct benefit of the PACT Program—either used to satisfy the investment and administrative costs of the PACT Program or reinvested in the PACT Trust Fund itself.  *Id.* at § 16-33C-6(d).  Under the plain language of the statute, the PACT Program, alone, benefits from the PACT Trust Fund.  Neither Plaintiffs nor their "Designated Beneficiaries" under their PACT contracts has any claims as a beneficiary of the PACT Trust Fund.

**2.      Comparing the ACES Program to the PACT Program demonstrates that the Legislature could have—but *did not*—make Purchasers of PACT contracts beneficiaries of the PACT Trust Fund.**

Reviewing the statutes creating the PACT Program and the ACES Program further demonstrates that the neither the Plaintiffs nor their children is an intended beneficiary of the PACT Trust Fund.   Alabama Code § 16-33C-6(b) creates the PACT Trust Fund and states:

> The PACT Trust Fund is <u>hereby created as the source for payment of the PACT Program's obligations under PACT contracts</u>. The amounts on deposit in the PACT Trust Fund shall not constitute property of the state, and the state may have no claim or interest in them. Payments which are received by the PACT Program from any public or private source, except those which are payments of administrative fees, shall be prudently placed in the PACT Trust Fund.  <u>In order to provide funds to enable the PACT Program to pay amounts due under the terms of its PACT contracts, there is irrevocably pledged to that purpose from the PACT Trust Fund the monies necessary to pay those amounts</u>. A PACT contract and any other contract entered into by or on behalf of the trust, does not constitute a debt or obligation of the state, and <u>no [P]articipant is entitled to any benefits except those for which he or she contracted</u>.

Ala. Code § 16-33C-6(b) (emphasis added).

9

In contrast, § 16-33C-10(b) creates the ACES Trust Fund and states:

>        The ACES Trust Fund is hereby created and shall be comprised of separate savings accounts held in segregated accounts as established by savings agreements. <u>Funds contributed to the savings accounts established pursuant to the ACES Program are held in trust by the [B]oard for the sole benefit of the [C]ontributor and [D]esignated [B]eneficiary</u>. Contributions and investment earnings to the savings account may be used for any qualified higher education costs of the [D]esignated [B]eneficiary. The amounts on deposit in the ACES Trust Fund shall not constitute property of the state, and the state may have no claim or interest in them. Contributions which are received by the ACES Program from any public or private source, except those which are payments of administrative fees, shall be placed in the ACES Trust Fund. A savings agreement, or any other agreement entered into by or on behalf of the ACES Program or ACES Trust Fund, does not constitute a debt or obligation of the state, and <u>no [C]ontributor is entitled to any amounts except for those amounts on deposit in or accrued to the respective savings account</u>.

Ala. Code § 16-33C-10(b).

Thus, the PACT Trust Fund was created "as the source for payment of the PACT Program's obligations under the PACT Contracts," *id.* § 16-33C-6(b), with no other reference to a beneficiary. Conversely, the ACES Trust Fund is clearly "held <u>in trust</u> by the [B]oard for the <u>sole benefit of the [C]ontributor and [D]esignated [B]eneficiary</u>," *id.* § 16-33C-10(b) (emphasis added). Had the Legislature intended for PACT Participants, like Plaintiffs, to be beneficiaries of the PACT Trust Fund, they would have used language similar to that included in the ACES statute, which makes clear that the funds in the ACES Trust Fund are held in trust for the benefit of Contributors and their Designated Beneficiaries. Instead the *only* reference to a PACT Program Participant occurs at the end of the section establishing the PACT Trust Fund and states that "no participant is entitled to any benefits *except those for which he or she contracted*." Ala. Code § 16-33C-6(b). The plain language of the enabling legislation affirms that PACT Program Participants, like Plaintiffs here, are entitled to *no benefits* except those for which they have contracted. Plaintiffs simply have no legally-enforceable rights in the PACT Trust Fund, which

was created as a separate entity solely for the purpose of meeting the obligations of the PACT Program.

The statutory provisions for the dissolution of the ACES Program and the PACT Program reinforce this point.  The PACT Program statute states that "any balances which remain in the PACT Trust Fund and in the PACT Administrative Fund after all costs and liabilities of the PACT Program have been paid, <u>shall be transferred to the control of the Alabama Commission on Higher Education</u> . . . ."  Ala. Code § 16-33C-9 (emphasis added).  Conversely, the ACES Program statute states that "any balances which remain in the ACES Trust Fund and in the ACES Administrative Fund after all costs and liabilities of the ACES Program have been paid, <u>shall be returned to [C]ontributors</u> according to savings agreements."  Ala. Code § 16-33C-13 (emphasis added).  These markedly different dissolution procedures further demonstrate that the Plaintiffs, as mere Participants in the Program, are not beneficiaries of the PACT Trust Fund.

Plaintiffs have not and cannot offer any support for their argument that they or their children are the intended beneficiaries of the PACT Trust Fund, and the statute makes clear that the Alabama Legislature created the PACT Trust Fund for the sole purpose of satisfying the contractual obligations of the PACT Program.  Thus, while Plaintiffs may have an indirect interest in the funds held in the PACT Trust Fund by virtue of their contractual agreements with the PACT Program and the PACT Board, that indirect interest does not render Plaintiffs beneficiaries of the trust itself.  *Wolosoff v. Gadsden Land & Bldg. Corp.*, 18 So. 2d 568, 570 (Ala. 1944) ("A person cannot enforce a trust merely because he *incidentally* may profit from the performance of a contract respecting property.").  Plaintiffs are not beneficiaries of the PACT Trust Fund and, therefore, do not have standing to raise these allegations.

### B. Only the PACT Board can bring suit against a third party for conduct that allegedly damages or depreciates the corpus of the trust.

As more fully set out in the Asset Managers' prior brief (DE 17 at 17-20), even assuming *arguendo* that the Plaintiffs could assert some kind of beneficiary interest in the PACT Trust Fund, they do not have standing to sue the Asset Managers—a third party—for conduct that allegedly damaged the corpus of the PACT Trust Fund.  Only the *trustee*—the PACT Board— has the legal capacity to bring a suit against a third party for conduct that damages or depreciates the trust assets.  "As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party.  *See* Restatement (Second) of Trusts § 281(1) (1957).  The right to bring such an action belongs to the trustee."  *Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849, 851 (8th Cir. 2003).  Thus, even if they could characterize themselves as beneficiaries of the PACT Trust Fund, beneficiary status would not be enough to confer standing to sue the Asset Managers.   As noted in the Bogert's treatise:

> Although the beneficiary is adversely affected by [the] acts of a third person, no cause of action inures to him on that account.  The right to sue in the ordinary case vests in the trustee as a representative.
> . . .
> In the absence of special circumstances, <u>the beneficiary is not eligible to bring or enforce these causes of action which run to his trustee.  Thus in the usual case he cannot sue a third person to recover possession of the trust property for himself or the trustee, or for damages for conversion of or injury to the trust property, or for the recovery of its income</u> . . . .

George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 869 at 112-13, 115-17 (2d ed. 1995) (emphasis added).   Thus, even if Plaintiffs were deemed to be express or implied beneficiaries of the PACT Trust Fund, that status would not confer standing to assert claims against third parties—the Asset Managers—for losses to the PACT Trust Fund assets.

Therefore, Plaintiffs have absolutely no standing to assert claims against the Asset Managers for allegedly causing damage to the PACT Trust Fund.  In the absence of such

authorization, their claims must be dismissed. *See, e.g., Slaughter v. Swicegood,* 591 S.E.2d 577 (N.C. App. 2004) (dismissing claims against third party for trust losses because plaintiff lacked standing); *Pillsbury v. Karmgard*, 22 Cal. App. 4th 743 (Cal. App. 1994) (plaintiffs' claim against third party for trust losses dismissed for lack of standing); *Apollinari v. Johnson*, 305 N.W.2d 565 (Mich. App. 1981) (affirming dismissal of claims against third parties for trust losses because plaintiffs lacked standing).

Accordingly, regardless of whether Plaintiffs are beneficiaries of the PACT Trust—and the Asset Managers have demonstrated that they are not—Plaintiffs' claims against the Asset Managers are due to be dismissed as Plaintiffs do not have standing to bring this action.

## II. Plaintiffs do not have the right to assert PACT-related claims against the Asset Managers under the PACT Contracts entered into between Plaintiffs and the PACT Board.

Plaintiffs' Complaint asserts that they bring this action in their capacity as purchasers of a PACT Contract.  (*See* Compl. ¶¶ 19, 20.)  Those contracts, however, are between the Plaintiffs and the PACT Board.   The Asset Managers are mentioned nowhere in the documents comprising Plaintiffs' PACT Contracts, and nothing in those documents imposes any contractual obligation on the Asset Managers.  Plaintiffs simply do not have standing to bring claims against the Asset Managers based on the PACT Contracts.

## III. Plaintiffs do not have the right to assert PACT-related claims under the contracts between the Asset Managers and the PACT Board on behalf of the PACT Program.

Finally, as more fully set out in the Asset Managers' prior brief (DE 17 at 24-28), Plaintiffs do not have standing to sue the Asset Managers based on the contracts between the Asset Managers and the PACT Board—either directly or as an alleged third party beneficiary. (*See* Compl. at ¶¶ 38-40.)  There is no question that Plaintiffs are not a party to these contracts, therefore they lack direct standing to sue.   Furthermore, Alabama law and the contracts

themselves make clear that neither Plaintiffs nor their Designated Beneficiaries ia a third party beneficiary of the contracts.

To recover as third party beneficiaries, Plaintiffs must allege "(1) that the contracting parties intended, at the time the contract was created, to bestow a <u>direct benefit</u> upon a third party; (2) that the complainant was the intended beneficiary of the contract; and (3) that the contract was breached." *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002) (emphasis added). In accordance with the limited scope of this brief, the Asset Managers will only address the first and second prongs of the *Miller* test. Plaintiffs can satisfy neither.

First, neither the Asset Managers nor the PACT Board intended to bestow a *direct* benefit on Plaintiffs. "In determining the parties' intent, [the Court] must first look to the contract itself, because, while '[t]he intention of the parties controls in construing a written contract,' 'the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous.'" *Id.* (quoting *Loerch v. Nat'l Bank of Commerce*, 624 So. 2d 552, 553 (Ala. 1993)). Without any supporting authority, Plaintiffs baldly assert that they are "third-party beneficiaries to any and all contracts between the State of Alabama and/or the PACT Board of Directors." (Compl. ¶ 40.) Plaintiffs, however, have not and cannot actually demonstrate that they are third-party beneficiaries using the plain, unambiguous language of the contracts between the Asset Managers and the PACT Board—or anything else. In fact, the plain, unambiguous language of those contracts makes clear that Plaintiffs were *not* intended beneficiaries:

> **Section 28: Beneficiary of Agreement:** The execution and performance of this Agreement is for the benefit of the Trust Fund and ***not for any other person*** or entity.

(DE 17 at Ex. 8.) The contracts expressly disavow any third party beneficiaries. Plaintiffs cannot satisfy the first prong of the *Miller* test.

14

Consequently, Plaintiffs also fail on the second prong—they are not intended beneficiaries of the contracts.  "A beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of a promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  *Rumford v. Valley Pest Control, Inc.*, 629 So. 2d 623, 630-31 (Ala. 1993) (citation omitted).  Here, contractual performance by the Asset Managers will not directly satisfy the obligation of the PACT Board and PACT Program to pay money on behalf of Plaintiffs.  The contracts between the PACT Board and Plaintiffs are separate and apart from the contracts between the PACT Board and the Asset Managers.  Neither the PACT Board nor the Asset Managers intended to bestow any benefits on Plaintiffs through the contracts between the PACT Board and the Asset Managers.  Plaintiffs, therefore, have no standing to sue under those contracts.  Thus, this Court lacks subject matter jurisdiction over this dispute as Plaintiffs do not have standing to bring the claims alleged in their Complaint.

## CONCLUSION

Simply stated, there is no contract between the Plaintiffs and the Asset Managers.  There is no statute creating a right of recovery by Plaintiffs against the Asset Managers. And, the Plaintiffs are not beneficiaries of the PACT Trust Fund.   In any event, Plaintiffs would not have standing to sue third parties such as the Asset Managers.  Consequently, the Plaintiffs' Complaint should be dismissed.


Dated August 3, 2009.

15

**INTECH Investment Management LLC**

/s Robert K. Spotswood
Robert K. Spotswood
Michael T. Sansbury
Grace L. Kipp

OF COUNSEL:

SPOTSWOOD SANSOM & SANSBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 986-3621
Facsimile: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com

Luca Bronzi
HOGAN & HARTSON LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone:  (305) 459-6621
Facsimile:  (305) 459-6550
lrbronzi@hhlaw.com

**Rhumbline Advisers**

/s Lee E. Bains, Jr.
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com


Michael A. Collora
Ariatna Villegas-Vazquez
DWYER AND COLLORA
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Telephone:  (617) 371-1033
Facsimile:  (617) 371-1037
mcollora@dwyercollora.com
avillegas-vazquez@dwyercollora.com

**Earnest Partners, LLC**

/s Lee E. Bains, Jr.
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

John Rock
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 492-6948
Facsimile: (612) 340-2868
rock.john@dorsey.com

**Turner Investment Partners Incorporated**

/s Jere F. White, Jr.
Jere F. White, Jr.
William H. Brooks
Brooke G. Malcom

OF COUNSEL:

LIGHTFOOT FRANKLIN WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200
Telephone:  (205) 581-0700
Facsimile: (205) 581-0799
jwhite@lightfootlaw.com
wbrooks@lightfootlaw.com
bmalcom@lightfootlaw.com


Michael W. McTigue
Richard E. Coe
DRINKER BIDDLE
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2751
Facsimile:  (215) 988-2757
Michael.McTigue@dbr.com
Richard.Coe@dbr.com

**Acadian Asset Management LLC**

/s Lee E. Bains, Jr.
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

**Principal Global Investors, LLC**

/s Luther M. ("Rusty") Dorr, Jr.
Luther M. ("Rusty") Dorr, Jr.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone:  (205) 254-1030
Facsimile:  (205) 254-1999
rdorr@maynardcooper.com

Perry A. Napolitano
REEDSMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
pnapolitano@reedsmith.com

Douglas K. Spaulding
REEDSMITH LLP
1301 K Street, N.W.
Suite 1300 East Tower
Washington, DC 20005
Telephone:  (202) 414-9235
Facsimile:  (202) 414-9299
dspaulding@reedsmith.com

**Western Asset Management Company**

/s Lee E. Bains, Jr.

A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

Robert D. Eckinger
ADAMS AND REESE LLP
2100 Third Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 250-5011
Facsimile:  (205) 250-5034
Robert.eckinger@arlaw.com

Marc T.G. Dworsky
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
Telephone:  (213) 683-9256
Facsimile:  (213) 683-5156
marc.dworsky@mto.com

## CERTIFICATE OF SERVICE

I hereby certify that, on August 3, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Counsel for Plaintiffs**
Andrew P. Campbell
Leitman, Siegal, Payne & Campbell
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
205.803.0051

Donald W. Stewart
Donald W. Stewart, PC
P. O. Box 2274
Anniston, AL 36202
256.237.9311

Dagney Johnson Walker
Johnson & Walker LLC
2100 Third Avenue North, Suite 810
Birmingham, AL 35203
205.254.3143

**Callan Associates Inc.**
Matthew H. Lembke
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
205.521.8000

s/ Grace L. Kipp
OF COUNSEL