## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BRIAN A. MCVEIGH et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. CV-09-0685-S** |
| | ) | |
| CALLAN ASSOCIATES, | ) | |
| INCORPORATED et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**ASSET MANAGERS' JOINT SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS ON THE STANDING ISSUES SET OUT IN
THE COURT'S JULY 27, 2009 ORDER**

Defendants INTECH Investment Management LLC, Rhumbline Advisers, Earnest Partners, LLC, Turner Investment Partners Incorporated, Acadian Asset Management LLC, Principal Global Investors, LLC and Western Asset Management Company (the "Asset Managers") hereby submit this joint supplemental reply brief in support of their Motion to Dismiss (DE 16 & 17) and in accordance with this Court's July 27th Order (DE 39), addressing the Plaintiffs' right to assert claims regarding the PACT Program under applicable Alabama trust law, the PACT statutes, or the PACT contracts.[1]

---

[1] The Asset Managers note that Plaintiffs filed an amended complaint (DE 46) concurrently with their Supplemental Memorandum of Law on the standing issue (DE 47). Accordingly, the amended complaint supersedes the original complaint and is now the operative pleading in this litigation.  *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219-20 (11th Cir. 2007) (noting that an amended complaint supersedes a previously filed complaint and becomes the operative pleading).  However, because the standing issues present in Plaintiff's original complaint have not changed with the amended pleading, the Asset Managers have gone forward with filing this reply brief pursuant to this Court's July 27th Order (DE 39).  All briefs filed pursuant to this Court's Order (DE 39) on the standing issues are still properly before the Court. *See Villas at Parkside Partners v. City of Farmers Branch*, 245 F.R.D. 551, 557 (N.D. Tex. 2007) (holding that "[t]he issue of standing equally applies whether the court considers the

*(Footnote continued on next page)*

## ARGUMENT

With no more than a cursory reference to their third-party beneficiary standing argument, Plaintiffs now rely almost entirely on their alleged status as a beneficiary of the PACT Trust Fund to establish standing.  Plaintiffs' reliance is misplaced for three reasons.  First, neither the plain language of the PACT enabling legislation nor the PACT Contracts themselves suggest that PACT Program Purchasers, such as Plaintiffs, are beneficiaries of the PACT Trust Fund. Second, even if Plaintiffs were beneficiaries of the PACT Trust Fund, only the trustee has standing to assert claims against a third party unless the demand requirement has been met, which has not occurred here.  Finally, Plaintiffs may not sue the Asset Managers directly because the Asset Managers are not trustees of the PACT Trust Fund.

**I.   Plaintiffs have failed to address Defendants' arguments regarding Plaintiffs' lack of third-party beneficiary standing and, in any event, do not have such standing.**

Plaintiffs' Supplemental Brief (DE 47 ("Pls.' Supp. Br.")) fails to engage Defendants' arguments that Plaintiffs do not have third-party standing to raise claims pursuant to the Asset Managers' contracts with the PACT Board, relying instead on Plaintiffs' alleged status as PACT Trust Fund beneficiaries.  Indeed, Plaintiffs' Supplemental Brief only makes three cursory references to third-party beneficiary standing without any support.  (*See* Pls.' Supp. Br. at 1, 4 & 14.)  Plaintiffs fail to explain how they have standing under the contracts between the Asset Managers and the PACT Board when Plaintiffs are clearly not contemplated beneficiaries under the plain language of those agreements.  (*See* DE 43 at 13-15.)  Plaintiffs have not and cannot satisfy the test under *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002).  Neither the

---

(*Footnote continued from previous page*)

original Complaint or the First Amended Complaint. Therefore, the court considers the [defendant's first] motion in light of the live pleading, the . . . First Amended Complaint").

PACT Board nor the Asset Managers intended to bestow any benefits on Plaintiffs through the contracts between the PACT Board and the Asset Managers, and Plaintiffs have no standing to sue under those contracts.

## II.   Plaintiffs lack standing here as they are not beneficiaries of the PACT Trust Fund.

Instead of claiming that they are third-party beneficiaries of the contracts between the PACT Board and the Asset Managers, Plaintiffs now assert that they are beneficiaries of the PACT Trust Fund.   But neither the plain text nor overall spirit of the enabling legislation supports Plaintiffs' bald assertions.   Acknowledging that the PACT Program is the "original" beneficiary of the PACT Trust Fund, Plaintiffs, nevertheless, claim that they have been assigned beneficiary rights in the PACT Trust Fund through their PACT Contracts.[2]   (Pls.' Supp. Br. at 5-6.)   Plaintiffs' argument fails for at least two reasons.   First, the plain language of the PACT statutes makes clear that no such assignment exists.   Second, the notion that the PACT Program has ceded any interest in the PACT Trust Fund to Program Purchasers, like Plaintiffs, defies logic.

---

[2] Plaintiffs' argument that the PACT Program had to be identified as the "original" beneficiary of the PACT Trust Fund because the Legislature "could not ascertain with specificity those individuals who [would seek] to participate" in the Program (Pls.' Supp. Br. at 5), makes little sense.   Just as with the ACES Program, the Legislature could have identified PACT Contract Purchasers or their "Designated Beneficiaries" as beneficiaries of the PACT Trust Fund.   *See* Ala. Code § 16-33C-10(b) (noting that the ACES Trust Fund is clearly "held in trust by the [B]oard for the sole benefit of the [C]ontributor and [D]esignated [B]eneficiary" (emphasis added)).   There was no need to determine the actual identity of the individuals who would ultimately participate in the PACT Program or the ACES Program.   This notion of an "original beneficiary" with the subsequent assignment of beneficiary rights finds no support in the text of the PACT statutes or the documents comprising the PACT Contract.

First, there is nothing in the plain language of the statute to support Plaintiffs' assignment theory.[3]   On the contrary, reading the enabling legislation as a whole makes clear that the Legislature could have made Program Purchasers beneficiaries of the PACT Trust Fund but chose not to do so.[4]   Ala. Code § 16-33C-7 sets forth everything that must be included in the PACT Contract and *requires* that the PACT Contract identify "[*a*]*ll other rights and obligations of the [P]urchaser*."   Ala. Code § 16-33C-7(10) (emphasis added).   Accordingly, if, as Plaintiffs argue, the PACT Program somehow assigns part of its interest as the beneficiary of the PACT Trust Fund to Program Purchasers through PACT Contracts, the PACT Contracts themselves

---

[3] Plaintiffs' reliance on the dissolution provision of the PACT statute is misplaced. (Pls.' Supp. Br. at 3, 6-7.)  The fact that the funds held in the PACT Trust Fund are used to satisfy the PACT Program's contractual obligations does not support Plaintiffs' theory that Program Purchasers somehow achieve beneficiary status through a PACT Contract.  Unlike the ACES Program, the funds paid in consideration for those contracts are not held in trust for the benefit of Purchasers and they have no right to any interest or growth.  Ala. Code § 16-33C-9.  Contrary to Plaintiffs' arguments, the dissolution provision shows that Plaintiffs are merely parties to a contract with the PACT Program; they are not beneficiaries to the PACT Trust Fund.

[4] Plaintiffs brush off the Asset Managers' comparison between the PACT Program and the ACES Program with little discussion.  (Pls.' Supp. Br.  at 5 n.6.)  Plaintiffs claim that the differences in the programs "have no bearing whatsoever on . . . the Legislature's intent to have the PACT Program assign beneficial interests to PACT Contract 'Purchasers.'" (*Id.*)  However, it is a fundamental principle of statutory interpretation that all sections of a statute "should be construed together to ascertain the meaning and intent of each."  *McCausland v. Tide-Mayflower Moving & Storage*, 499 So. 2d 1378, 1382 (Ala. 1986).  Indeed, "the rules of statutory interpretation require that all statutes relating to the same subject or having the same general purpose be read together to aid in determining legislative intent. . . .  Related statutes shall be read *in pari materia* to ascertain the meaning and intent of each."  *Junkins v. Glencoe Volunteer Fire Dep't*, 685 So. 2d 769, 771 (Ala. Civ. App. 1996).  Thus, parallels and distinctions between the PACT Program and ACES Program—which are undisputedly created by the same statute for the same general purpose—are relevant to ascertaining legislative intent.  The Legislature could have set up Program Purchasers as beneficiaries of the PACT Trust Fund just as it did with the ACES Program; it did not.  Plaintiffs simply have no beneficiary standing as to the PACT Trust Fund.  Additionally, Plaintiffs give no explanation as to why the PACT Program requires an "intermediary beneficiary" while the ACES Program does not.  (Pls.' Supp. Br. at 5 n.6.)  The fact of the matter is that the ACES Program clearly bestows beneficiary rights on its participants, while the PACT Program does not.

must expressly identify those additional rights.  This is consistent with the general rule that a beneficiary must actually "*manifest*[] *an intention* to make a present transfer of his interest" in a trust.  *See* Restatement (Second) of Trusts § 134 (1957).  Neither the PACT statutes nor the PACT contracts manifest an *affirmative intention*, on the part of the PACT Program, to transfer any rights whatsoever.

Struggling to cobble together their assignment theory, Plaintiffs cite Ala. Code § 16-33C-5(5) on at least two occasions for the proposition that "[u]nder the Act . . . "Purchasers" . . . become assigned beneficiaries of the PACT Trust."  (Pls.' Supp. Br. at 4, 5-6).  Plaintiffs go as far as saying that § 16-33C-5(5) is "actually a statutory provision authorizing" the PACT Program to cede its beneficiary rights.  (*Id.* at 5-6.)  Ala. Code § 16-33C-5(5), however, merely states that the PACT Board has the power to "contract with a [P]urchaser under the PACT Program"; there is no mention of any kind of assignment of the PACT Program's beneficiary rights.  A statutory provision permitting the PACT Board to enter into contracts with Program Purchasers is a far cry from "authorizing" the PACT Program—which Plaintiffs apparently consider synonymous with the PACT Board—to "alienat[e] its beneficial interest" in the PACT Trust Fund.  (*Id.* at 5-6.)

Furthermore, Plaintiffs' statutory interpretation borders on misleading as they argue, without any statutory support, that both Program "Participants" and Program "Purchasers" somehow "become assigned beneficiaries of the PACT Trust."  (Pls.' Supp. Br. at 2-3, n.2 & n.3.)

Specifically, Plaintiffs assert that the enabling legislation uses the term "Participant" to mean "PACT Trust Fund beneficiar[y] entitled to receive benefits from the trust to the extent of their assignment from the PACT Program."  (*Id*. at 2 n.2.)  In truth, no statutory provision

defines the term "Participant" thusly.   The term "Participant"—which is never expressly defined—is merely used in other definitions to refer to the individual (presumably the parent or legal guardian) who enters into a PACT Contract with the PACT Board to participate in the PACT Program.  Ala. Code § 16-33C-3(17).

Likewise, Plaintiffs assert, again without support, that a Program "Purchaser" is "the assignee of the PACT Program's beneficial interest."  (Pls.' Supp. Br. at 3 n.4, 2-3.)   There is absolutely nothing in the statutory language to indicate that "Participants" or "Purchasers" are anything approaching an "assignee" of the PACT Program's beneficiary rights as to the PACT Trust Fund.  Both terms merely reference individuals who enter into contracts with the PACT Board to participate in the PACT Program.  Plaintiffs ignore both the plain language and the spirit of the PACT statute in suggesting anything else.

Second, the idea that the PACT Program assigned its beneficiary rights in the PACT Trust Fund to Program Purchasers defies logic.  The enabling legislation makes clear that the PACT Trust Fund was created for the *sole* purpose of funding the PACT Program's obligations under PACT Contracts.  Ala. Code § 16-33C-6(b) (The PACT Trust Fund is "the source for payment of the PACT Program's obligations under PACT contracts."); *see also id.* ("In order to provide funds to enable *the PACT Program* to pay amounts due under the terms of *its* PACT contracts, there is irrevocably pledged to that purpose from the PACT Trust Fund the monies necessary to pay those amounts." (emphasis added)).  Accordingly, the PACT Trust Fund exists to fulfill the PACT Program's contractual obligations—obligations owed to PACT Purchasers like Plaintiffs here.

How then can Plaintiffs claim to "step in the shoes" of the PACT Program and assume rights and benefits as a beneficiary of the PACT Trust Fund, when the PACT Trust Fund was

solely and expressly created to fulfill the PACT Program's contractual obligations to Program Purchasers like Plaintiffs?   Do Plaintiffs contemporaneously assume the PACT Program's obligations under the PACT Contract such that Plaintiffs become both obligor and obligee?  *See* George T. Bogert, *Trusts* § 38, 142 (6th ed. 1987) ("If a beneficiary who transfers his interest under the trust had held that interest subject to an equity in favor of another person, the assignee of the interest takes it subject to the equity . . . .").  If not, does the PACT Program lose its interest in the PACT Trust Fund but retain the duty to honor PACT Contracts?  How is the PACT Program to fulfill its obligations if it has assigned away its interest in the PACT Trust Fund?

Plaintiffs' assignment theory simply defies logic.  It is undisputed that the PACT Program was, at the very least, the initial beneficiary of the PACT Trust Fund.[5]  It is undisputed that the PACT Trust Fund exists for the sole purpose of fulfilling contractual obligations undertaken by the PACT Program.  It is also undisputed that the PACT Program entered into PACT Contracts with Purchasers like Plaintiffs here.  Thus, if the PACT Program "assigned" its beneficiary rights—the ability to rely on the PACT Trust Fund to fulfill *its* contractual obligations—to PACT Program Purchasers, the PACT Program effectively assigned both its contractual obligations and the ability to fulfill those obligations to the very party to whom those

---

[5] Plaintiffs improperly assert that the PACT Trust Fund is a failed trust because the trustee and beneficiary are identical.  (Pls.' Supp. Br. at 6 n.7.)  Ala. Code § 16-33C-9, however, makes clear that any remaining money in the PACT Trust Fund at the dissolution of the Program is to be transferred to the Alabama Commission on Higher Education ("ACHE").  Thus, at the very least, the ACHE has a contingent future interest in the corpus of the trust.  *See First Ala. Bank of Tuscaloosa, N.A. v. Webb*, 373 So. 2d 631, 635 (Ala. 1979).  Additionally, the PACT Board as trustee and the PACT Program as beneficiary are clearly not identical entities.  Although the PACT Board has obligations and powers with regard to the PACT Program, the statute clearly establishes two separate entities.

obligations are owed.  It makes no sense to argue that the PACT Program, in entering into PACT Contracts, simultaneously undertook a contractual obligation and ceded the ability to meet that contractual obligation to the other contracting party.

Plaintiffs are not beneficiaries of the PACT Trust Fund under any theory, and the statute makes clear that the legislature did not intend to bestow any form of beneficiary status on Program Purchasers, like Plaintiffs.  Because Plaintiffs are not beneficiaries of the PACT Trust Fund, they have no standing to sue in this matter.

**III.    Even if Plaintiffs could assert some form of beneficiary status with regard to the PACT Trust Fund, they lack standing to bring suit against a third party as only the trustee has standing to raise such claims, and Plaintiffs have failed to satisfy the demand requirement.**

As argued more fully in the Asset Managers' Memorandum of Law in Support of Their Motion to Dismiss (DE 17 at 18-20), Plaintiffs lack standing to bring suit against the Asset Managers.  The PACT Board, as trustee, has the legal capacity to bring a suit against the Asset Managers, a third party, for conduct that damages or depreciates the trust assets.  "As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party.  *See* Restatement (Second) of Trusts § 281(1) (1957).  The right to bring such an action belongs to the trustee."  *Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849, 851 (8th Cir. 2003) (citation omitted).

Assuming, *arguendo*, that Plaintiffs were entitled to some form of beneficiary status— which they are not—they would not have standing to sue the Asset Managers until they make a demand of the PACT Board or prove that such demand would be futile.  Plaintiffs do not dispute the bedrock principle that a trust beneficiary may not pursue claims against third parties without first making demand upon their trustee to pursue such claims.  *See, e.g.*, *Blackburn v. Fitzgerald*, 30 So. 568, 568 (Ala. 1901).  Nor do they claim that they made a demand on the PACT Board.

Thus, presuming Plaintiffs can even assert claims as beneficiaries of the PACT Trust Fund, Plaintiffs can only bring suit against the Asset Managers if Plaintiffs can somehow show that demand on the PACT Board would have been futile.  Plaintiffs cannot make that showing.

When considering demand futility in the shareholder context, Alabama courts have held that the suing party "must demonstrate such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty."  *James v. James*, 768 So. 2d 356, 360 (Ala. 2000).  There is nothing here to indicate that the PACT Board, if given the chance, would not have taken the actions necessary to fulfill its duties as trustee.

Furthermore, Plaintiffs' allegations that the PACT Board acquiesced in the conduct of the Asset Managers are insufficient to excuse demand.  To excuse demand, Plaintiffs must show that the PACT Board actually engaged in self-dealing or fraud.  Plaintiffs have made no such allegations.  "[A]bsent specific allegations of self-dealing or bias on the part of the majority of the board, [their] mere approval and acquiescence [in the actions giving rise to the lawsuit] are insufficient to render demand futile."  *Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir. 1983).  Mere approval of the challenged conduct is insufficient; allegations of fraud or self-dealing are required.  *See In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 265 (1st Cir. 1973).

The PACT Board was entitled to the opportunity to review the facts of this case and make a determination regarding the propriety of filing suit—with multiple considerations possibly counseling against litigation.  *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006) ("This [demand requirement] is most apt in this case because the alleged injury to the Plan arises from a contractual relationship between [the trustee] and [a third party], and [the trustee] has not had an opportunity to fully consider [plaintiff's] allegations nor determine, as trustee of the Plan, whether it is in the best interest of the Plan to pursue such allegations." (affirming

dismissal of claim brought against third party on behalf of ERISA trust for failure of beneficiaries to make demand on trustee)).  Even if Plaintiffs had some form of beneficiary status, Plaintiffs do not have standing to bring this suit because they failed to properly make a demand on the PACT Board or show that such a demand would have been futile.

Plaintiffs' argument that demand is futile because the members of the PACT Board could have been named as defendants in this matter has been repeatedly and consistently rejected by courts.  Excusing demand on the basis that the PACT Board members are disinclined to sue themselves would "effectively abrogate" the demand requirement, because it would apply in every case.  *See In re Friedman's, Inc. Derivative Litig.*, 386 F. Supp. 2d 1355, 1363 (N.D. Ga. 2005) (quoting *Aronson v. Lewis*, 473 A.2d 805, 818 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).  For this reason, it is well-settled that "the mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors."  *Aronson*, 473 A.2d at 815.

The presumption that the PACT Board is disinterested should be heightened here as the members are either appointed by the legislative and executive branches or designated for their expertise.  *See* Ala. Code § 16-33C-4(a) (providing that PACT Board members be appointed by, *inter alia*, the Governor and the Speaker of the House of Representatives and requiring designee from Alabama Commission on Higher Education, Alabama Department of Postsecondary Education, and Council of College and University Presidents).  Each member is required to "possess knowledge, skill, and experience in business or financial matters commensurate with the duties and responsibilities of the plan."  *Id*. § 16-33C-4(c).  Courts are generally cautious about assuming the functions of an administrative agency, especially when intervention "would drag [the court] into an area of complex economic [] policy."  *Ctr. for Biological Diversity, Inc.*

*v. FPL Group, Inc.*, 166 Cal. App. 4th 1349, 1371 (2008) (quoting *Shamsian v. Dep't of Conversation*, 136 Cal. App. 4th 621, 641-42 (2006)).  Plaintiffs here ask the Court to ignore the expertise of the PACT Board based on the wishes of a few disgruntled Purchasers.  Only the trustees, here the PACT Board members, are responsible for protecting the interests of *all* Purchasers, and they should be entrusted with deciding whether to waste the PACT Program's assets on this meritless suit, especially when a legislative solution may make this expenditure unnecessary.  *See, e.g., Pillsbury v. Karmgard*, 22 Cal. App. 4th 743, 763 (1994) (refusing to disturb trustee's "proper business judgment in declining to bring an action against defendants.").

IV.  **Even if Plaintiffs could assert some form of beneficiary status with regard to the PACT Trust Fund—entitling them to bring claims against a *trustee*—Plaintiffs lack standing here as the Asset Managers are not trustees of the PACT Trust Fund.**

In an effort to avoid the restrictions on the ability of trust beneficiaries to sue third parties, Plaintiffs attempt to characterize the Asset Managers as trustees of the PACT Trust Fund. In fact, the Asset Managers cannot be characterized as such.

A.  **The Asset Managers are not "Designated Trustees."**

As reflected in the PACT statutes, the one and only trustee of the PACT Trust Fund is the PACT Board.  *See* Ala. Code § 16-33C-3(6).  (*See* DE 43 at 4-5.)  The enabling legislation authorizes the PACT Board to "invest as it deems appropriate any funds in the PACT Trust Fund" and to "engage the services of qualified persons and entities for administrative and technical assistance in carrying out the responsibilities of the plan, including the PACT Trust Fund . . . ."  *Id.* §§ 16-33C-5(3) & (7).  The PACT Board, with the assistance of Callan Associates, developed a broad investment strategy for the PACT Trust Fund assets.  (*See* Section II of 2003 Callan Contract and Preamble to 2006 Callan Contract (DE 42 at Ex. A & B).)  The PACT Board subsequently retained the Asset Managers to implement its investment strategy.

(*See* DE 17 at 4-5, 25-26.)  Each Asset Manager was retained by the PACT Board to invest in a specific, enumerated class of investments.  (*See* DE 17 at Ex. 8.)

This statutory and contractual framework in no way suggests that the Asset Mangers "assumed all the benefits and obligations of the PACT Program trustees for investing activities," as Plaintiffs allege.  (*See* Pls.' Supp. Br. at 9.)  Indeed, Plaintiffs cite no Alabama case for the sweeping proposition that an agent of the trustee can himself become the trustee.  Instead, Plaintiffs rely on a Bronx County Surrogate Court decision for the general proposition that a person who assumes the duty of a trustee may be classified as a trustee.  *In re Application for a Judicial Settlement of Account of Beiny,* 2003 WL 21729779 (N.Y. Sur. July 17, 2003) ("*Beiny*"), however, dealt with a *de facto* trustee, not a *designated* trustee.  A *de facto* trustee is a legal fiction employed in equity.  A *designated* trustee is just that—an individual designated to serve as trustee.   Plaintiffs have not alleged that the Asset Managers are *de facto* trustees and *Beiny* is inapposite here.  On the other hand, numerous other courts have held that an agent acting with authority delegated by a trustee does *not* become a co-trustee.  *See, e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1351 (7th Cir.), *rev'd on other grounds*, 500 U.S. 90 (1991) ("investment adviser is not a 'trustee'"); *Matter of Estate of Jahnel*, 428 N.W.2d 528, 532-33 (S.D. 1988) (finding that trustee's agent was not liable as an implied trustee).

There is simply no support in either the PACT statutes or the PACT contracts for Plaintiffs' argument that the Asset Managers are "designated" trustees.  The Asset Managers contracted to provide a service to the PACT Board.  Those contracts did not obligate the Asset Managers beyond their terms and specifically disclaimed any responsibilities to third parties.  (*See* DE 43 at 14.)  There is nothing to suggest that the Asset Managers are "designated" trustees

of the PACT Trust Fund, and Plaintiffs, even if they could claim the necessary beneficiary status, lack standing to sue.

**B.    The Asset Managers are not "trustees *in invitum"* or "trustees *de son tort*."**

Likewise, Plaintiffs are wrong in alleging that because the Asset Managers "knowingly" participated in a wrongdoing perpetrated by the PACT Board, they are "trustees *in invitum*" or "trustees *de son tort*."   The Investment Management Agreements ("IMAs") between the Asset Managers and the PACT Board, belie Plaintiffs' allegation.[6]   The IMAs do not, as Plaintiffs contend, inform the Asset Managers that the investment strategy outlined constitutes a breach of the PACT Board's fiduciary duty.   To the contrary, the IMAs contain an express representation that the investment or investment class, for which each Asset Manager was being hired, were suitable and proper.[7]   Therefore, the threshold premise for the Plaintiffs' implied trustee theory—that the Asset Managers knowingly participated in a breach of fiduciary duty—is unfounded.   As a result, the decisions and authorities cited by Plaintiffs in support of this theory are irrelevant.   Under no theory can Plaintiffs show that the Asset Managers are "trustees" of the PACT Trust Fund such that Plaintiffs—presuming beneficiary status—have standing to sue. Plaintiffs' claims must be dismissed.

---

[6] Because the Plaintiffs seek to impose liability upon the Asset Managers based upon the Asset Managers' contracts with the PACT Board, the Investment Management Agreements ("IMAs") executed between the PACT Board and the Asset Managers may appropriately be considered by this Court in connection with the motion to dismiss. (*See* DE 17 at 10-11 & Ex. 8.)

[7] Indeed, the IMAs all contain the following representation by the PACT Board: "'Permitted Investments' means the investments that may be made with assets of the PACT Trust Fund authorized by Section 16-33C-5 (3) of the Code of Alabama that *constitute legal investments for public funds in the state,* including legal investments for the State Treasurer and the Alabama Trust Fund and as provided in the Investment Policy."   (*See* DE 17 at Ex. 8 (emphasis added).)

**CONCLUSION**

Plaintiffs do not have standing to bring this suit against the Asset Managers.  Plaintiffs, who failed to engage the Asset Managers' arguments regarding third-party beneficiary standing, rely almost entirely on their alleged status as beneficiaries of the PACT Trust Fund.  Nothing in the enabling legislation or the PACT Contracts, however, suggests such a status.   Even if the Court could find some kind of beneficiary status, however, Plaintiffs do not have standing to sue third parties like the Asset Managers without fulfilling the demand requirement, and Plaintiffs do not have standing to sue the Asset Managers, who are not trustees of the PACT Trust Fund. Consequently, Plaintiffs' Complaint should be dismissed.

Dated August 17, 2009.

**INTECH Investment Management LLC**

/s Robert K. Spotswood
Robert K. Spotswood
Michael T. Sansbury
Grace L. Kipp

OF COUNSEL:

SPOTSWOOD SANSOM & SANSBURY, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 986-3621
Facsimile: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com

Luca Bronzi
HOGAN & HARTSON LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone:  (305) 459-6621
Facsimile:  (305) 459-6550
lrbronzi@hhlaw.com

**Rhumbline Advisers**

/s Lee E. Bains, Jr.                 
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com


Michael A. Collora
Ariatna Villegas-Vazquez
DWYER AND COLLORA
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Telephone:  (617) 371-1033
Facsimile:  (617) 371-1037
mcollora@dwyercollora.com
avillegas-vazquez@dwyercollora.com

**Earnest Partners, LLC**

/s Lee E. Bains, Jr.
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

John Rock
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 492-6948
Facsimile: (612) 340-2868
rock.john@dorsey.com

**Turner Investment Partners Incorporated**

/s Jere F. White, Jr.
Jere F. White, Jr.
William H. Brooks
Brooke G. Malcom

OF COUNSEL:

LIGHTFOOT FRANKLIN WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200
Telephone:  (205) 581-0700
Facsimile: (205) 581-0799
jwhite@lightfootlaw.com
wbrooks@lightfootlaw.com
bmalcom@lightfootlaw.com


Michael W. McTigue
Richard E. Coe
DRINKER BIDDLE
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone:  (215) 988-2751
Facsimile:  (215) 988-2757
Michael.McTigue@dbr.com
Richard.Coe@dbr.com

**Acadian Asset Management LLC**

/s Lee E. Bains, Jr.
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

**Principal Global Investors, LLC**

/s Luther M. ("Rusty") Dorr, Jr.
Luther M. ("Rusty") Dorr, Jr.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone:  (205) 254-1030
Facsimile:  (205) 254-1999
rdorr@maynardcooper.com

Perry A. Napolitano
REEDSMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
pnapolitano@reedsmith.com

Douglas K. Spaulding
REEDSMITH LLP
1301 K Street, N.W.
Suite 1300 East Tower
Washington, DC 20005
Telephone:  (202) 414-9235
Facsimile:  (202) 414-9299
dspaulding@reedsmith.com

**Western Asset Management Company**

/s Lee E. Bains, Jr.
A. Inge Selden, III
Lee E. Bains, Jr.
Edward A. ("Ted") Hosp

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
lbains@maynardcooper.com
iselden@maynardcooper.com
thosp@maynardcooper.com

Robert D. Eckinger
ADAMS AND REESE LLP
2100 Third Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 250-5011
Facsimile:  (205) 250-5034
Robert.eckinger@arlaw.com

Marc T.G. Dworsky
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
Telephone:  (213) 683-9256
Facsimile:  (213) 683-5156
marc.dworsky@mto.com

21

## CERTIFICATE OF SERVICE

I hereby certify that, on August 17, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Counsel for Plaintiffs**
Andrew P. Campbell
Caroline Smith Gidiere
M. Clayborn Williams
Leitman, Siegal, Payne & Campbell
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
205.803.0051

Donald W. Stewart
Benjamin T. Larkin
Donald W. Stewart, PC
P. O. Box 2274
Anniston, AL 36202
256.237.9311

Dagney Johnson Walker
Johnson & Walker LLC
2100 Third Avenue North, Suite 810
Birmingham, AL 35203
205.254.3143

**Callan Associates Inc.**
Matthew H. Lembke
Andrew L. Brasher
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
205.521.8000

**C.S. McKee LP**
Gregory H. Hawley
White Arnold & Dowd PC
2025 Third Avenue North, Suite 500
Birmingham, AL 35203

/s/ Grace L. Kipp
OF COUNSEL