FILED
2011 Sep-09  PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

REL:09/09/2011

Notice: This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

### SPECIAL TERM, 2011

_____

### 1081683

_____

### Ex parte Callan Associates, Inc.

### PETITION FOR WRIT OF MANDAMUS

### (In re:  Carol M. Perdue, as next friend and legal guardian of Anna K. Perdue, as designated beneficiary of and on behalf of the Prepaid Affordable College Tuition Trust Fund a/k/a The Wallace-Folsom Prepaid College Trust Fund

### v.

### Callan Associates, Inc., et al.)

### (Montgomery Circuit Court, CV-09-900556)

SHAW, Justice.

1081683

Callan Associates, Inc. ("Callan"), petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to dismiss the underlying action filed by Carol M. Perdue, "as next friend and legal guardian of Anna K. Perdue, as designated beneficiary of and on behalf of the Prepaid Affordable College Tuition Trust Fund a/k/a The Wallace-Folsom Prepaid College Trust Fund." For the reasons stated below, we grant the petition and issue the writ.

## Facts and Procedural History

In 1990, the Alabama Legislature established the Alabama Prepaid Affordable College Tuition ("PACT") program as part of the Wallace-Folsom College Savings Investment Plan, see §§ 16-33C-1 to -8, Ala. Code 1975. As explained by the Court of Civil Appeals in Johnson v. Taylor, 770 So. 2d 1103 (Ala. Civ. App. 1999), the purpose of the PACT program is

> "to assist payment of college tuition costs by allowing a person to purchase PACT contracts in advance of a child's attending college. The PACT program obligates the state to pay tuition in accordance with the contract if the minor child attends a state college or university. § 16-33C-1. The purchase price of a PACT contract is determined actuarially. § 16-33C-6(f). Payments received become public funds, which the state invests to generate assets to fund the child's education. § 16-33C-6(d)."

2

1081683

770 So. 2d at 1104.

Pursuant to the statutory scheme, the PACT program is overseen by a "PACT board," which serves as both "[t]he board of directors and trustees of the PACT Trust Fund." § 16-33C-3(14), Ala. Code 1975.[1]  Also pursuant to statute, the members of the PACT board are specifically empowered "[t]o invest as [the board] deems appropriate any funds in the PACT Trust Fund ...."  § 16-33C-5(3), Ala. Code 1975.  In fulfilling that responsibility, including decisions relating to "acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property of the PACT Trust Fund," both

---

[1]As set out in § 16-33C-4.1, Ala. Code 1975, the PACT board is a 15-member board consisting of the following: the director of finance; the state treasurer; two persons appointed by the governor; two persons appointed by the speaker of the House of Representatives (one of whom is required to be a PACT contract holder); one person appointed by the lieutenant governor; one person appointed by the senate president pro tempore; the president of the Council of College and University Presidents (or his or her designee); the chancellor of the Postsecondary Education Department (or his or her designee); the executive director of the Alabama Commission on Higher Education; one member of the House of Representatives appointed by the speaker of the House of Representatives; one member of the Senate appointed by the lieutenant governor; the chief executive officer of the Retirement Systems of Alabama (or his or her designee); and the president of the Alabama Association of Independent Colleges and Universities (or his or her designee).

1081683

"the PACT board and any person or investment manager to whom the PACT board delegates any of its investment authority" is charged with "exercis[ing] the judgment and care under the circumstances then prevailing which persons of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation but to permanent disposition of funds, considering the probable income as well as the safety of their capital."   §16-33C-6(d), Ala. Code 1975.

In 2002, Carol M. Perdue ("Carol") entered into a PACT contract for the benefit of her daughter, Anna K. Perdue ("Anna"), pursuant to which Carol agreed to make 60 monthly payments of $240 in exchange for benefits consisting of the future payment for Anna of qualified in-state tuition and mandatory fees from the PACT Trust Fund into which all such payments from all purchasers of PACT contracts are pooled and then invested.  It is undisputed both that Anna is the "designated beneficiary" of the PACT contract purchased by Carol and that Carol has paid all the amounts due under that contract.  See § 16-33C-3(10) (defining "designated beneficiary" as "[t]he person designated at the time the PACT

4

1081683

contract is entered into ... as the person who benefits from
payments of qualified higher education costs at eligible
educational institutions, or that person's replacement").  It
is also undisputed that Anna has not made a demand for tuition
benefits under the PACT contract of which she is the
designated beneficiary.

In 2003, the PACT board entered into an "Investment
Consultant Agreement" with Callan, pursuant to which Callan
was to provide "professional investment consulting services to
... the PACT Board."  See § 16-33C-5(7), Ala. Code 1975
(expressly granting the PACT board the authority "[t]o
contract for necessary goods and services, to employ necessary
personnel, and to engage the services of qualified persons and
entities for administrative and technical assistance in
carrying out the responsibilities of the plan").  That
contract was renewed in 2006.

On February 27, 2009, Kay Ivey, then state treasurer and,
by virtue of that office, chairman of the PACT board, issued
a letter to the purchasers (holders) of PACT contracts
informing them that a downturn in the stock market had
negatively impacted the assets of the PACT Trust Fund but

1081683

indicating that the PACT board remained committed to honoring
the PACT contracts and that the PACT board was investigating
options and exploring opportunities that would "allow PACT
benefits to be consistently paid."  Subsequently, on May 7,
2009, Carol filed the underlying litigation on behalf of Anna,
as a designated beneficiary of the PACT Trust Fund, alleging
"that the Trust has lost millions of dollars as a result of
Callan's and the Trustees' mismanagement."  Specifically,
Carol's complaint named as defendants both Callan and the
members of the PACT board (solely in their official
capacities) and alleged that the defendants "failed to meet
[the applicable] standard of care by investing 70% or more of
the Trust assets in equities ... and by projecting and seeking
unrealistic rates of return which necessarily required
speculative and risky investments, and which resulted in
greater risk to the portfolio and the ultimate significant
loss of capital."[2]

---

[2]Carol emphasizes here, as she did in the trial court,
both that the present claims are derivative claims being
pursued on behalf of the PACT Trust Fund and that the
underlying action is "not a claim for breach of [her]
individual PACT contract" but is, instead, "a claim brought on
behalf of the PACT Trust, for losses incurred by the Trust, as
a result of the mismanagement of trust assets by the [PACT]
Board and Callan."

6

1081683

Callan moved to dismiss Carol's claims, arguing, among other things, that a purported beneficiary of a trust could not maintain an action against a third party on behalf of the trust without first demanding that the trustee act or show a sufficient reason for the failure to make such a demand.[3]  The PACT board also filed a motion to dismiss, asserting defenses unique to the PACT board, including immunity, but also adopting Callan's argument related to Carol's purported inability to pursue the asserted claims on behalf of the PACT Trust Fund.  On August 19, 2009, following a hearing, the Montgomery Circuit Court issued an order denying Callan's and the PACT board's motions to dismiss, which included, in pertinent part, the following:

> "Defendants' first argument is that Plaintiff lacks standing to bring these claims. The Court finds this argument to be without merit. Defendants also contend that Plaintiff's claims are not ripe because to date all beneficiaries have had their tuition paid. Perhaps anticipating such an obstacle, Plaintiff notes that she sues not for any unpaid tuition but on behalf of the PACT trust to collect the money lost as a result of alleged mismanagement. In that posture, the Court finds Plaintiff's claim to be ripe."

---

[3]Callan raised several other arguments attacking Carol's ability to maintain this action, including the claim that Anna was not actually a  beneficiary of the PACT Trust Fund.  Given our holding below, we pretermit discussion of that issue.

7

1081683

Callan subsequently filed the present petition seeking a writ of mandamus directing the trial court to dismiss Carol's action against it, and this Court ordered answers and briefs.[4]

Standard of Review

> "'"The writ of mandamus is a drastic and extraordinary writ, to be 'issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So. 2d 501, 503 (Ala. 1993); see also Ex parte Ziglar, 669 So. 2d 133, 134 (Ala. 1995)." Ex parte Carter, [807 So. 2d 534,] 536 [(Ala. 2001)].'

"Ex parte McWilliams, 812 So. 2d 318, 321 (Ala. 2001)."

Ex parte Carson, 945 So. 2d 448, 449 (Ala. 2006).

Discussion

---

[4]The PACT board and Callan filed separate petitions for writs of mandamus to this Court from the denial of their respective motions to dismiss Carol's complaint. In its petition (case no. 1081769), the PACT board sought mandamus relief based on state-agent immunity and sovereign immunity and on the ground that Carol's claims were not ripe for adjudication.  However, the PACT board subsequently moved to dismiss its petition, and we granted the motion by order entered on December 14, 2010.

1081683

In its petition, Callan contends, among other things, that it is entitled to a writ of mandamus because, it says, the trial court erred in concluding that Carol has "standing" to pursue her stated claims on behalf of the PACT Trust Fund. More specifically, Callan maintains that Carol lacks "standing" to sue because she failed, before filing the underlying complaint, to first demand that the PACT board sue Callan. Because we agree with Callan that Carol's failure to first demand that the PACT board file an action deprived her of the ability to initiate the underlying action, we issue the writ on that ground and pretermit discussion of Callan's remaining claims.

Callan cites authority indicating, which authority Carol does not dispute, that any cause of action initiated on behalf of a trust for conduct damaging the assets of the trust belongs to the trustee of that trust and that before a beneficiary may proceed with filing a derivative claim on behalf of the trust, the beneficiary "must first move the trustee to act, or show some sufficient reason for the failure to do so." Blackburn v. Fitzgerald, 130 Ala. 584, 588, 30 So. 568, 568 (1901) (citing Bailey v. Selden, 112 Ala. 593, 605,

1081683

20 So. 854, 857 (1896) ("[C]omplainants had no right to institute proceedings in equity to enforce their equitable rights ... without first having moved the trustee to act, resulting in failure to procure action by her."); and Arnett v. Bailey, 60 Ala. 435, 438 (1877) ("Neither can the bill be maintained to recover possession of the lands, without averment, not found in this record, that Word, who holds the legal title in trust, refuses to bring an action for its recovery.")). Cf. James v. James, 768 So. 2d 356, 360 (Ala. 2000) ("Before a shareholder can be awarded damages on a derivative claim, the shareholder must make a presuit demand on the board of directors of the corporation to correct the wrongs alleged ...." (citations omitted)), and Tillery v. Tillery, 155 Ala. 495, 498, 46 So. 582, 582-83 (1908) ("The administrator having the legal title to the personal assets of the estate, holding them in trust for purposes of administration, ... the heir could not institute any proceeding for the enforcement of any claim which the estate held against others ... without showing either that the administrator refused to do so, or was in collusion with such

10

1081683

[others], or occupied a position antagonistic to his duties as administrator.").

This principle is explored more fully in the following decision of the North Carolina Court of Appeals:

> "This Court has recognized that when an individual grantor places his property in an active trust, the grantor's legal title to that property passes to the trustee. ... The common law rule provides that any injury to the property placed in a trust may only be redressed by the trustee. That rule is summarized as follows:

>> "'The trustee has a title (generally legal title) to the trust property, usually has its possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct. Although the beneficiary is adversely affected by such acts of a third person, no cause of action inures to him on that account. The right to sue in the ordinary case vests in the trustee as a representative.

>> "'....

>> "'In the absence of special circumstances, the beneficiary is not eligible to bring or enforce these causes of action which run to his trustee. Thus in the usual case he cannot sue a third person to recover possession of the trust property for

11

1081683

> himself or the trustee, or for damages for
> conversion of or injury to the trust
> property, or for recovery of its income or
> to compel an agent of the trustee to
> account, or to enjoin a threatened injury
> to trust property by a third person.'

"George G. Bogert & George T. Bogert, The Law of
Trusts and Trustees § 869 at 112-13, 115-17 (rev. 2d
ed. 1995).

"Several exceptions to the common law rule
barring individual lawsuits by beneficiaries have
been recognized. When the beneficiary is in actual
physical possession of trust property, he can sue
for injury to the possession or to enjoin a
disturbance of possession of the property. See
Bogert, § 869 at 117; Restatement (Second) of Trusts
§ 281. If a conflict of interest arises between the
trustee and a beneficiary, or between two
beneficiaries, a beneficiary has standing to sue
individually. ... [I]f the trustee refuses or fails
to initiate a meritorious lawsuit against a third
party, the beneficiary may file a cause of action to
protect his own interests. See Bogert, § 869 at
118-21. This exception to the common law rule is
outlined in the Restatement (Second) of Trusts, §
282:

> "'(1) Where the trustee could maintain an
> action at law or suit in equity or other
> proceeding against a third person if the
> trustee held the property free of trust,
> the beneficiary cannot maintain a suit in
> equity against the third person, except as
> stated in Subsections (2) and (3).

> "'(2) If the trustee improperly refuses or
> neglects to bring an action against the
> third person, the beneficiary can maintain
> a suit in equity against the trustee and
> the third person.

1081683

> "'(3) If the trustee cannot be subjected to
> the jurisdiction of the court or if there
> is no trustee, the beneficiary can maintain
> a suit in equity against the third person,
> if such suit is necessary to protect the
> interest of the beneficiary.'"

Slaughter v. Swicegood, 162 N.C. App. 457, 464-65, 591 S.E.2d 577, 582-83 (2004) (emphasis added).  See also International Ass'n of Fire Fighters, Local 2665 v. City of Clayton, 320 F.3d 849, 851 (8th Cir. 2003) ("'As a general rule, a beneficiary may not bring an action at law on behalf of a trust against a third party. ... The right to bring such an action belongs to the trustee.").

In her response in opposition to Callan's motion to dismiss, and again in her response to Callan's petition in this Court, Carol argues that, despite "the law in Alabama ... that a lawsuit against a third party on behalf of a trust is ordinarily properly brought by the trustee, and not the beneficiary," she has demonstrated circumstances that place her action within an exception to that well settled principle. In support of her position, Carol first cites this Court's decision in First Alabama Bank of Montgomery, N.A. v. Martin, 425 So. 2d 415 (Ala. 1982), in which we observed that "[i]t has long been the law in Alabama that where a trustee does not

1081683

perform his duty to protect the trust, the beneficiaries may sue in equity to protect their rights."   425 So. 2d at 423 (emphasis added).   Carol correctly notes that Tillery, supra, stands for the proposition that a beneficiary may initiate a derivative action on behalf of the trust if "the beneficiary shows the trustee failed to bring suit, the trustee colluded with the third party, or the trustee occupied an antagonistic position to the beneficiary," Carol's answer at 12-13, and relies on § 282 of Restatement (Second) of Trusts, as set out in Slaughter, supra.

In James, supra, this Court concluded that "if the demand on the [trustees] would be futile, then the demand requirement is excused."   768 So. 2d at 360.   James established the test for demonstrating the futility of the requisite initial demand as follows:   "'[T]he shareholder ... must demonstrate such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty.'"   Id. (quoting Elgin v. Alfa Corp., 598 So. 2d 807, 815 (Ala. 1992)).[5]

---

[5]Although James is a derivative-shareholder action and not an action by the beneficiary of a trust, the parties do not dispute that the principles regarding a presuit demand in both such actions are analogous.   See Riley v. Bradley, 252 Ala.

14

1081683

None of the foregoing exceptions discussed in <u>Slaughter</u>, <u>Tillery</u>, or <u>James</u> appear to apply to excuse a presuit demand in the present case.  Although it appears to defy logic to require that Carol should have first demanded that the PACT board sue itself for alleged mismanagement of the funds in the trust, see <u>Elgin</u>, 598 So. 2d at 814 (noting that "this Court [has] held that if the directors themselves are the alleged wrongdoers, then director demand may be futile"), it has not been demonstrated that a demand on the PACT board that it pursue claims against Callan would have been so futile as to bring this case within that exception.  Certainly, Carol's unsupported assertion that a conflict of interest exists, without more, fails to demonstrate that a demand would be futile as to the claims against Callan, a third party with whom, from all appearances, the PACT board has nothing but an arm's length contractual relationship.[6]  C.f. <u>Lewis v. Graves</u>,

282, 288, 41 So. 2d 641, 645 (1948) ("[T]he beneficiary [of a trust] is the equitable owner of trust property. On the same principle, the property of a corporation is treated in equity as owned by the stockholders." (citations omitted)).

[6]In his dissent, Justice Murdock apparently presumes that, because Callan and the PACT board had been involved in a contractual relationship, because Carol had previously sued the PACT board and Callan jointly, and because there were purportedly other suits filed against the PACT board, there

1081683

701 F.2d 245, 248 (2d Cir. 1983) (pointing to the "more than ample authority from other circuits" indicating that "mere approval [of] or acquiescence [to]" the transactions complained of is insufficient to establish futility of demand (citing Grossman v. Johnson, 674 F.2d 115, 124 (1st Cir. 1982); Lewis v. Curtis, 671 F.2d 779, 785 (3d Cir. 1982); Greenspun v. Del E. Webb Corp., 634 F.2d 1204, 1210 (9th Cir. 1980); and In re Kauffman Mut. Fund Actions, 479 F.2d 257, 265 (1st Cir. 1973))). Indeed, Carol's assertion of conflict is further undermined by her own acknowledgment that there is no evidence demonstrating collusion between the PACT board and Callan and by the fact that § 16-33C-4.1 specifies that at least one member of the PACT board is required to be a PACT contract holder. See supra note 1.

---

was a "'conflict of interest' insofar as expecting [the PACT board] to file an action against Callan alleging that the investments [it] made based upon Callan's advice had been imprudent." ____ So. 3d at ____. However, there is nothing before this Court indicating that the PACT board has aligned itself with Callan in any way or otherwise proving Carol's claims regarding the futility of a presuit demand or a conflict of interest. In the absence of actual evidence demonstrating a conflict or the futility of a demand, we are unwilling to presume at this time that the PACT board is disinclined to pursue an action against Callan.

1081683

There is nothing in the materials before us indicating, and Carol does not allege, that she requested that the PACT board sue Callan or even that she ever approached or notified the PACT board regarding her intentions before filing her complaint, despite indications of this Court's willingness to view any such efforts with leniency.  Compare <u>James</u>, 768 So. 2d at 360 (finding that letters from minority shareholder and his attorney, even if not sufficient to constitute demands for suit, supported the conclusion "that any further demand would be futile").  Further, the materials before us reflect that Carol's complaint was filed only a little over two months after the issuance of the letter placing PACT contract holders on notice of the diminished assets of the Trust Fund and indicating that the PACT board was both "working hard and considering options to maintain the viability of [the] PACT" program and "meeting with the distinguished leaders of [Alabama's public universities and colleges] to form a partnership to allow PACT benefits to be consistently paid." We thus hold that there was no demonstration of either an improper refusal by the PACT board to pursue Callan in an effort to protect the trust assets or that sufficient time

17

1081683

lapsed for Carol to have concluded that the PACT board had neglected to do so. Cf. <u>Stallworth v. AmSouth Bank of Alabama</u>, 709 So. 2d 458, 464, 465 n. 2 (Ala. 1997) (concluding both that, despite the plaintiff's claim "that a majority of the board had committed wrongs against the corporation," the plaintiff "failed to demonstrate that a demand upon the directors would have been futile" and that, even assuming the plaintiff made the required demand, "premature filing of a complaint or claim after a demand has been made is equivalent to a failure to make a demand, and that premature filing warrants dismissal"). Therefore, even assuming, as Carol argues, that Anna is a beneficiary of the PACT Trust Fund, Carol has demonstrated no circumstance excusing her from the demand requirement, and, in the absence of such a demand or a demonstration of the futility thereof, Carol's derivative suit was premature. See <u>Riley v. Bradley</u>, 252 Ala. 282, 288, 41 So. 2d 641, 645 (1948) ("[I]n case a trustee refuses to perform his duty to protect the trust, the beneficiaries may sue in equity to protect their rights, in the right of the trustee, but only when that may be necessary to protect their interests."). In consideration of the foregoing, Callan's

1081683

motion to dismiss in the trial court was well founded; therefore, we grant Callan's petition and issue the requested writ directing the trial court to dismiss Carol's claims against Callan.

PETITION GRANTED; WRIT ISSUED.

Malone, C.J., and Woodall, J., and Lyons, Special Justice,* concur.†

Parker and Murdock, JJ., and Shores, Special Justice,** dissent.

Stuart, Bolin, Main, and Wise, JJ., recuse themselves.

*Retired Associate Justice Champ Lyons, Jr., was appointed on June 17, 2011, to serve as a Special Justice in regard to this petition.

**Retired Associate Justice Janie L. Shores was appointed on July 7, 2011, to serve as a Special Justice in regard to this petition.

†Note from the reporter of decisions: Rule 16(b), Ala. R. App. P., provides that "when, by reason of disqualification the number of justices competent to sit [in the determination of a case] is reduced, ... the concurrence of a majority of the justices sitting shall suffice; but, in no event, may a cause be determined unless at least four justices sitting shall concur therein."

19

1081683

MURDOCK, Justice (dissenting).

As a preliminary matter, I wish to note that the issue of "standing" referenced in the main opinion is an issue that goes to the cognizability under Alabama law of a claim when a trust beneficiary has not first made the requisite demand upon the trustee to pursue a claim against a third party based on actions allegedly detrimental to the trust and to the beneficiary, not whether the beneficiary has experienced an actual, concrete injury of the nature intended when courts speak of "standing" in the sense of what is necessary for a constitutionally sufficient "case or controversy" and, in turn, subject-matter jurisdiction.  See generally Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).[7]

---

[7]"[O]ur courts too often have fallen into the trap of treating as an issue of 'standing' [and therefore as an issue of subject-matter jurisdiction] that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action." Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So. 3d 1216, 1219 (Ala. 2010).  Cf. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, Jurisdiction § 3531 (3d ed. 2008) ("The question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into inappropriate standing terms."). See also Altrust Fin. Servs., Inc. v. Adams, [Ms. 1091610, July 29, 2011] ___ So. 3d ___, ___ (Ala. 2011) (Murdock, J., concurring in the result).

1081683

That said, I turn now to the merits of the issue whether the claims against Callan Associates, Inc., in this case should have been dismissed because of the failure of the plaintiff to have made a presuit demand upon the PACT board (sometimes referred to herein as "the board") to file an action against Callan.

The fundamental premise upon which the complaint in the present case is based is that the investments made by the board were not prudent investments.   By statute, the responsibility for investing the trust fund falls with the PACT board, the trustees of the fund.  It is the board that is empowered by law to invest the money as it deems appropriate and to retain such consultants and administrative assistance to assist in this endeavor as it deems appropriate.[8]

_____

[8]The PACT board members specifically are empowered "to invest as they deem appropriate any funds in the PACT Trust Fund ...." § 16-33C-5(3), Ala. Code 1975.  In fulfilling this responsibility, the PACT board is to make decisions as to "acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property of the PACT Trust Fund" and, in so doing, is charged with "exercising the judgment and care under the circumstances then prevailing which a person of prudence, discretion, and intelligence exercises in the management of their own affairs, not in regard to speculation but to permanent disposition of funds, considering the probable income as well as the safety of their capital." § 16-33C-6(d), Ala. Code 1975.

1081683

The board entered into a contractual relationship with Callan pursuant to which Callan was to advise it and to help administer the trust fund. Even in the context of this contractual relationship, of course, ultimate responsibility remained with the board.[9]

In <u>Blackburn v. Fitzgerald</u>, 130 Ala. 584, 588, 30 So. 568, 568 (1901), this Court stated that before beneficiaries of a trust "can proceed by [a] bill in equity for the enforcement of equitable rights" on behalf of the trust, they "must first move the trustee to act or <u>show some sufficient reason</u>" why this should not be required (emphasis added). The complaint here alleges concerted action between the trustees and Callan; indeed, the trustees and Callan are named as codefendants. The complaint alleges that the trustees hired Callan in the first place, worked in concert with Callan, and had the ultimate responsibility to assess and act upon Callan's recommendations as the board deemed prudent.

In addition to the foregoing, before this action was filed, the trustees already had been sued in one or more

---

[9]Although the trustees may have enlisted Callan's help in administering the trust fund, their duties as trustees obviously were not delegable.

1081683

other actions in which, according to the complaint, they had been accused of "negligence, breach of contract and other misfeasance in connection with the administration, delegation and performance of their duties in connection with the trust." According to the complaint, the fact that the trustees already faced liability based on such allegations created a "conflict of interest" insofar as expecting them to file an action against Callan alleging that the investments they made based upon Callan's advice had been imprudent.

In <u>Tillery v. Tillery</u>, 155 Ala. 495, 498, 46 So. 582, 582 (1908), the Court noted the general rule of trust and estate law that the right and obligation to pursue a legal claim on behalf of an estate (whether a trust estate or a decedent's estate) belongs to the person who holds legal title to the estate and who has the legal obligation to preserve and administer the estate, i.e., the trustee of a trust or the personal representative of a decedent's estate. The <u>Tillery</u> Court then spoke of three exceptions to the general rule that a beneficiary cannot "institute any proceeding for the enforcement of any claim which [a trust] held against others": the beneficiary can show (1) that the trustee has refused to

23

1081683

institute a proceeding for enforcement of the claim, (2) that
the trustee is "in collusion" with the person against whom the
claim would be asserted, or (3) that the trustee "occupied a
position [such that asserting the claim would be] antagonistic
to his duties as [trustee]," i.e., the trustee has a conflict
of interest.  155 Ala. at 498, 46 So. at 582-83.  As the main
opinion notes by relying on the extended quotation from
Slaughter v. Swicegood, 162 N.C. App. 457, 464-65, 591 S.E.2d
577, 582-83 (2004) (emphasis added), which in turn quotes
George G. Bogert & George T. Bogert, The Law of Trusts and
Trustees § 869 at 112-13, 115-17 (rev. 2d ed. 1995), a well
respected treatise on trust law, "'"[i]n the absence of
special circumstances, the beneficiary is not eligible to
bring or enforce ... causes of action which run to his
trustee."'"  ___ So. 3d at ___.  But "'[i]f a conflict of
interest arises between the trustee and a beneficiary, or
between two beneficiaries,'" "'the beneficiary may file a
cause of action to protect his own interests.  See Bogert,
§ 869 at 118-21.'"  ___ So. 3d at ___ (quoting Slaughter, 162
N.C. App. at 465, 591 S.E.2d at 583) (emphasis added).[10]

_____

    [10]Ultimately, the main opinion places great reliance upon
the fact that this is not a case in which it has been shown

1081683

The main opinion states that it "appears to defy logic" to think that the PACT board should be asked to sue itself. ___ So. 3d at ___. It would seem that asking the board to sue Callan would be the next closest thing. It would amount to asking the trustees to sue the administrative entity they chose to hire and with whom they have acted in concert. Moreover, the central premise of such a suit, and thus a judicial admission that would have been necessary on the part of the board in order to file such a suit, would have been

---

that a demand upon the trustees would have been "futile." It borrows this futility standard from James v. James, 768 So. 2d 356, 360 (Ala. 2000), a case involving the prerequisites for filing shareholder-derivative actions on behalf of corporations. Although the main opinion bases its reliance upon James on the ground that a shareholder-derivative action is "analogous" to a suit by a trust beneficiary, ___ So. 3d at ___ n. 5, the fact that the two are analogous does not make them the same. I believe the exceptions articulated as to trust and estate cases, as cited, particularly the "conflict of interest" standard, are more appropriate for such cases than a "futility" standard.

Even accepting for the sake of argument the applicability of the so-called "futility" standard developed for shareholder-derivative actions, however, I note that this standard is deemed satisfied when the shareholder demonstrates sufficient "'antagonism between the directors and the corporate interest[] that the directors would be incapable of performing their duty.'" James, 768 So. 2d at 360 (quoting Elgin v. Alfa Corp., 598 So. 2d 807, 815 (Ala. 1992)). Even more specifically in this regard, we have recognized that, "if the directors themselves are the alleged wrongdoers, the demand may be futile." Elgin, 598 So. 2d at 814.

1081683

that the investments made by the board were not prudent.  The

notion that these investments made by the board were not

prudent is exactly the cause for which the board itself faced

criticism and potential and actual legal claims.[11]  Given the

joint efforts of the trustees and Callan in managing the trust

fund, with the trustees having final decision-making

authority, and given the threatened and pending claims against

the trustees, I must conclude that exceptions of the nature

_____

[11]By the time the plaintiff filed the present action, it
was known, of course, that the investments at issue had not
"work[ed] out" as planned.  That this fact was known at that
time, i.e., in hindsight, did not and does not answer the
question whether these investments were imprudent when the
investments were made, i.e., when viewed from the vantage
point of the information known and the circumstances existing
at the time the investments were made, including information
specific to the particular investments, the history of the
economy and relevant markets, and the nature of the other
investments maintained at the time by the PACT board.  To have
required the board to bring an action against Callan before
any determination of liability on the board's part, therefore,
would have been to require the board to make an allegation,
and a judicial concession, that the investments the board
itself had made were imprudent investments at the time the
board made them, a proposition that had not (and has not) been
established but that would be central to any potential
liability on the part of the board.  (Contrary to the
suggestion in note 6 of the main opinion, ___ So. 3d at ___,
it was this presuit juxtaposition of the parties, not some
evidence of what the board's actual postsuit position turned
out to be, that makes for the requisite "conflict of interest"
-- i.e., a conflict between the interests of the trustees and
the interests of the plaintiff -- that in turn made a presuit
demand on the board unnecessary.)

1081683

contemplated in the above-cited authorities are applicable in this case.

    Respectfully, therefore, I must dissent.

    Parker, J., and Shores, Special Justice, concur.

1081683

SHORES, Special Justice (dissenting).

I join Justice Murdock's dissent. I also point out that the petition for the writ of mandamus should be denied for the following additional reason. The plaintiff is suing on behalf of the PACT Trust. Although she does not allege that she made a formal demand on the trustees to bring the action against Callan Associates, Inc., the trustees are parties to the lawsuit. If the facts as developed through discovery or otherwise indicate that the trustees' interests are aligned with those of the plaintiff, the trial court can realign the parties to reflect that. It seems to me a great waste of time and money to order the trial court to dismiss this action and to require the exact same parties to start over with the only added allegation being that the plaintiff has first made a formal demand upon the trustees to bring the action. It is clear from the record of the hearing on the motion to dismiss that the trial court has a complete understanding of the claims presented, the position of the parties, and the applicable law. I would let the court proceed to adjudicate those claims.

28